CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
JOHN C. FUNK, ESQ.
Nevada Bar No. 9255
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada  89102
Ph:  (702) 385-1954
Fax: (702) 385-9081
*Attorneys for Plaintiff*

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| JOYCE ZAIC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT a political subdivision of the STATE OF NEVADA; DANIELLE PIEPER, individually; B. EAGER, P#6189, individually and in his official capacity as a police officer; T. FREDERICK, P#9793, individually and in his official capacity as a police officer; SUNRISE MOUNTAINVIEW HOSPITAL, INC.; NEAL, security guard for MOUNTAIN VIEW HOSPITAL; CHRISTOPHER SIMMS, security guard for MOUNTAIN VIEW HOSPITAL; JOHN DOES I through X, and ROE CORPORATIONS I through X, inclusive;<br><br>　　　　　Defendants. | CASE NO.:   2:10-cv-01814-PMP-LRL<br><br>**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT** |

　　　　COMES NOW, the Plaintiff, JOYCE ZAIC, by and through her attorneys of record, CAL J. POTTER, ESQ., and JOHN C. FUNK, ESQ., of POTTER LAW OFFICES and hereby submits her Response and Opposition to Defendants' Motion to Dismiss and Motion for Partial Summary Judgment.

///

///

///

///

1

1  This Response and Opposition is made and based upon the papers and pleadings on file with the Court herein, the attached Memorandum of Points and Authorities and any oral arguments this Court may entertain at the hearing of this matter.

DATED this 10th day of January, 2011.

POTTER LAW OFFICES

By  /s/ John C. Funk, Esq.
CAL J. POTTER, III, ESQ.
Nevada Bar No.1988
JOHN C. FUNK, ESQ.
Nevada Bar No. 9255
1125 Shadow Lane
Las Vegas, Nevada  89102
*Attorneys for Plaintiff*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**
**STATEMENT OF FACTS**

Plaintiff incorporates her answers to the interrogatories attached hereto as Exhibit 1 as though set forth fully herein.  On March 21, 2008 Joyce Zaic was visiting her father at MountainView hospital in room 229 of the Intensive Care Unit, Unit number 3.  Joyce would visit her father, Frank Zaic, every day from the time he was admitted to the hospital on February 29, 2008. (See Exhibit 1 - answers to LVMPD Interrogatories, response to Interrogatory numbers 4 through 18).  Joyce was listed on her father's MountainView hospital admittance records as his next of kin and his only daughter.  She was also identified as the primary contact person in case of an  emergency as she had lived with and taken care of her father for over 40 years. (Id).

Joyce's father was in the Intensive Care Unit at MountainView hospital where he was in critical condition.  It was very difficult and emotional times as Frank was battling for his life and was told he was in need of a pacemaker.  There was a strict standing physician's order in place for Joyce's father's room which stated there were absolutely no visitors to be allowed into Frank's room other than his children.  On March 21, 2008 Joyce was sitting at the foot of her father's bed around 8:00 p.m. when her brother Steve Zaic entered the father's ICU room with

Defendant Danielle Piper whom Joyce had never seen or met before. (Id).

Joyce was concerned with who this individual was and why she was in her father's room while he was in critical condition and reminded her and her brother of the standing hospital order allowing only family in the room as her father did not need additional stress. Danielle did not leave despite Joyce requesting she go. Danielle was informed of the standing order which prohibited her from being in the ICU room but she would not leave. Joyce again advised Danielle that she needed to leave as Frank was in critical condition and needed his rest. Danielle simply smirked at Joyce which prompted Joyce to respond again asking her leave. Danielle looked at Joyce's brother and back at Joyce and continued to smirk which Joyce perceived was to instigate a confrontation. (Id).

Joyce's brother Steve became upset with Joyce for telling Danielle to leave and rushed towards Joyce. Joyce attempted to run towards the door to leave the room believing her brother was going to attack her. Steve caught Joyce before she could leave her father's ICU room and pushed her to the ground and restrained her arms behind her back while Danielle watched the entire event and did not intervene. Several nurses witnessed the altercation as they rushed into the ICU and pulled Joyce's brother off the top of her. Danielle and Steve left the room. (Id).

As Joyce tried to leave the room the two Defendant security guards would not allow her to leave. As Joyce attempted to exit the hospital the security guards walked so close behind the Plaintiff on each side of her that they brushed up against her, banging their handcuffs in a threatening manner. Joyce went to the elevator but the two security Defendants followed her inside of the elevator. Fearing for her safety and trying to get away from the Defendants Joyce rushed back to her father's room where the security guards continued to follow and continued to harass her. Joyce called 911 from inside of her father's ICU room and reported the harassment by the security guards. Joyce requested from the 911 dispatcher for the police to come to escort her to her vehicle. Joyce also advised the 911 dispatcher that the security guards would not let her leave the room she was in. All of these statements were recorded. A subsequent phone call made to dispatch stated the security guards had hand cuffed Joyce who was upset. (Id).

Defendants contend that Joyce was trespassing on their property from a prior incident

1  that occurred on or about March 17, 2008.  However, Joyce was allowed by MountainView to
2  continue to see her father in ICU which she did each day.  Joyce was not aware that she had ever
3  been formally trespassed prior to March 21, 2008.   The LVMPD arrived and Joyce was then
4  allowed to walk out of her father's ICU room where Defendant Officer Frederick told her that
5  the hospital did not want her in the hospital.  Joyce was initially told she could leave but then
6  the officer would not let her leave. (Id).

7       The police officer went to talk to Danielle and Steve.  They said that they wanted to arrest
8  Joyce for domestic violence.  The police officer told them he was not going to arrest Joyce as
9  there were no witnesses, no bruises and no proof that a battery took place by Joyce on her
10  brother or Danielle.  Plaintiff alleges that despite not having evidence Officer Frederick allowed
11  Danielle Pieper to make a citizens arrest after advising Joyce she had not done anything wrong
12  as part of his investigation.  Joyce was not arrested for trespass but was arrested based upon the
13  citizen's arrest made at the request of Danielle.  Officer Frederick then arrested Joyce and
14  placed handcuffs on her and she was taken to jail. (Id).

15       Joyce was released from jail approximately 17 hours later.  She took a cab to
16  MountainView to retrieve her truck and drove her vehicle home.  Upon arriving home Joyce
17  immediately called the hospital to check on the status of her father.  The nursing staff would not
18  give Joyce any information on her father's health or condition.  The nurse she spoke with said
19  they were instructed not to give her any medical information about her father's condition and the
20  MountainView staff member hung up the phone on her.  Joyce called back to check on her
21  father but each time she called she was hung up on.  Unbeknownst to Joyce her father had been
22  taken off life support without her or her families knowledge and without her father's written
23  permission.  Frank Zaic died at MountainView hospital without his daughter, who had been
24  there every day, by his side.  (Id).

25       Plaintiff alleges she had a prior encounter with the hospital Defendants which played a
26  role in her arrest on March 21, 2008.  On or about March 17, 2008 Joyce was placed in
27  handcuffs by Defendant Chris Simms and John Doe security guard whom Plaintiff now believes
28  is named Maurice.  These Defendants had followed Joyce out to the street in front of the

4

hospital into traffic.  The security guards then proceeded to chase Joyce and placed handcuffs on her in the middle of the public street and took her back to the hospital property. (Id).

When Plaintiff questioned why she was being grabbed and handcuffed when she wasn't on the hospital property she was told by Defendant Doe, Maurice, that MountainView owns the sidewalk and the street and his boss gave him permission to bring her back on hospital property.  Maurice handcuffed Plaintiff behind her back, verbally assaulted her in addition to physically restraining her with Defendant Simms present.  The Defendants grabbed the handcuffs and pulled them up towards Joyce's head causing additional pain making her cry.  Joyce became fearful of the security guards as a result of this incident and on March 21, 2008 she was scared when she saw Defendant Simms. (Id).

The security guards eventually took off the handcuffs and told Joyce to leave the property.  Joyce was never read any trespass statute at that time.  The security guard threatened Joyce advising her that she was lucky he didn't trespass her.  Following this incident Joyce was still permitted back into the hospital.  Joyce was not prohibited from continuing to see her father after the March 17, 2008 incident and she continued to visit her father until the incident involving the altercation created by her brother and Defendant Pieper which resulted in her subsequent arrest on March 21, 2008.

## II.
### ARGUMENTS

**A.   THE STANDARD FOR DISMISSAL**

The Court's review of a motion to dismiss is based on the contents of the Complaint.  The Court must accept the allegations as true and construe them in the light most favorable to the Plaintiff.  Abramson v. Brounstein, 897 F.2d at 391; Love v. United States, 871 F.2d 1488 (9th Cir. 1989).  In such a case, the court may accept all of the alleged facts, and all inferences from the alleged facts, as true.

Pursuant to Rule of Civil Procedure 12(b)(5), a Court must dismiss an action, "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'."  Neitzske v. Williams, 490 U.S. 319 (1989), 109 S.Ct.

1827, 104 L.Ed.2d 338, 348 (1989) (quoting Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Abramson v. Brounstein, 897 F.2d 389, 391 (9th Cir. 1990); Gibson v. United States, 781 F.2d 1334 (9th Cir. 1986).   Hence, dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Balesteri v. Pacifica Police Dept., 901 F.2d 699 (9th Cir. 1990).  In the present case, there are sufficient facts alleged under a cognizable legal theory.  The record is clear that MountainView Defendants acted tortuously toward the Plaintiff as outlined above and had prohibited her from leaving the facility on March 21, 2008below and committed battery on March 21, 2008 by handcuffing her and preventing her from leaving.

**B.    THE STANDARD FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

In considering a motion for Summary Judgment, the Court must examine all of the evidence in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L.Ed. 202 (1986); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Although it is not enough for the party opposing a properly supported Motion for Summary Judgment to "rest on mere allegations or denial of his pleadings," Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986), all evidence, and all inferences that may reasonably be drawn from the evidence, must be viewed in the light most favorable to the non-moving party.

If any genuine issue of material fact appears to the trial court, it is not the function of the trial court to weigh evidence on that issue.  Even if the weight or believability of the evidence is clearly in favor of one party, the other party is entitled to a trial by jury to determine the facts. See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986).

Cases based on violations of constitutional rights are often inappropriate for summary judgment.  Wright, Miller and Kane, *Federal Practice and Procedure Civil*, 3d § 2732.2, at 152

1  (1998). "Further, the very nature of the claims involved often presents factual issues that require
2  summary judgment to be denied." *Id.*

3  Federal Rule of Civil Procedure 56(c) provides Summary Judgment is appropriate if the
4  "pleadings, depositions, answers to interrogatories, and admissions on file, together with
5  affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving
6  party is entitled to judgment as a matter of law". One of the principal purposes of this Rule is to
7  dispose of factually unsupported claims or defenses at an early stage of the litigation. Celotex
8  Corporation v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).

9  In considering a motion for summary judgment, the Court must examine all the evidence
10 in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S.
11 654, 655 S.Ct. 993 (1962).

12 Although it is not enough for the party opposing a properly supported Motion for
13 Summary Judgment to "rest on mere allegations or denial of his pleadings;" Anderson v. Liberty
14 Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986), all evidence, and all inference that
15 may reasonably be drawn from the evidence, must be viewed in the light most favorable to the
16 non-moving party.

17 If any genuine issue of material fact appears to the trial court, it is not the function of the
18 trial court to weigh evidence on that issue. Even if the weight or believability of the evidence is
19 clearly in favor of one party, the other party is entitled to a trial by jury to determine the facts.
20 See, also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986).

21 **C. DEFENDANTS' MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY**
22 **JUDGMENT MUST BE DENIED**

23 Defendant MountainView hospital, their security guards and staff seek dismissal and
24 partial summary judgment as to the Plaintiff's claims for malicious prosecution, false
25 imprisonment and battery. Defendants motion must be denied as to the false imprisonment and
26 battery as there are genuine issues of fact in dispute.

27     **1. Malicious prosecution**
28 Plaintiff does not object to the dismissal of the malicious prosecution claims as to the

1  MountainView Defendants. This specific cause of action specifically pertains to Defendant
2  Danielle Pieper who is a district attorney and was the person responsible for not only making the
3  citizen's arrest on March 21, 2008 but for the subsequent prosecution of Plaintiff as a result of
4  the subject incident. Based upon these assertions Plaintiff does not object and would seek to
5  clarify the amended complaint as to this cause of action to accurately reflect who the malicious
6  prosecution charge pertains too.

7      **2.    False imprisonment**

8      The MountainView Defendants contend they should be entitled to partial summary
9  judgment on the issue of false imprisonment. The MountainView Defendants contend they had
10 probable cause to detain the Plaintiff and that their said detainment was reasonable. Defendant
11 relies on factually unsupported allegations as the basis of their opinion.

12     Defendants state Plaintiff was given a trespass card from the police prior to the subject
13 incident but they do not provide documentation to support that a trespass card was given nor do
14 the Defendants provide documentation stating the Plaintiff was advised she was trespassed.
15 Plaintiff's own testimony as set forth in her interrogatories was that she was never read any
16 trespass statute by Defendants and was never given any card. This is further supported by
17 MountainView continuing to permit Joyce to visit her father at the hospital. On March 21, 2008
18 Joyce had not done anything wrong. It was the hospital nursing staff who witnessed the
19 altercation started by Joyce's brother when he began to attack her and the nursing staff had to
20 remove him off of the top of her. (See Exhibit 1).

21     In addition, there is no evidence to support the Plaintiff had trespassed on March 21,
22 2008 as she was not arrested by LVMPD for trespass despite a call being placed by Defendant
23 Neal alleging she had. Arguably, had the investigating officer had a sufficient basis or probable
24 cause to arrest Plaintiff for trespass on March 21, 2008 he would have clearly done so. A
25 reasonable juror could conclude there was insufficient notice given to Plaintiff that she had been
26 trespassed from MountainView given the continued visits to the hospital after the March 17,
27 2008 incident. As there was ongoing visits by Plaintiff following the March 17, 2008 incident
28 Defendants arguments must fail as they waived any potential trespass claims by permitting and

allowing Plaintiff to return and continue to see her father.  There are clearly issues of fact in dispute as to whether Plaintiff was on notice of trespass and whether she had in fact trespassed.

There was no probable cause to detain Joyce as she had not done anything wrong.  It was the hospital staff who violated their own existing doctors order which clearly stated only family members were allowed into the Plaintiff's father's ICU room.  Frank Zaic's records were clear that Joyce was the only female daughter of Frank and would be the only female permitted to be inside of the hospital room.  (See Exhibit 1).  The Plaintiff was trying to leave the premises following the altercation started by Steve Zaic and Danielle Pieper but she was prohibited from doing so by Defendants.  The Plaintiff was handcuffed and detained without probable cause constituting an unlawful detention and false imprisonment.  In Dubner v. San Francisco, 266 F.3d 959 (9th Cir. 2001), the Ninth Circuit found that the burden is on the Defendants to show privilege.  More importantly, in Thacker v. City of Columbus, 328 F.3d 244, 255 (6th Cir. 2003), the Court held that probable cause is a jury question unless there is only one reasonable determination possible.  *See also* McKenzie v. Lamb, 738 F.2d 1005 (9th Cir. 1984).

It is only when the facts relating to the existence of probable cause are not in dispute, that the issue of probable cause, as to a detention, becomes a question of law.  If there are facts in dispute as to probable cause it is an issue of fact. Bonamy v. Zenoff, 77 Nev. 250, 362 P.2d 445 (1961).  There are issues of fact in dispute as to whether the MountainView Defendants had probable cause to detain and unlawfully handcuff the Plaintiff therefore summary judgment and dismissal is not appropriate.  On all the prior incidents Joyce was asked to leave the hospital temporarily which she did promptly.  Joyce was never formally advised she could not return which is evidenced by her continued visitation to see her father.  Joyce was only instructed that she needed to come during the allowable visiting hours per the hospitals own nursing notes.

In order to establish false imprisonment the Plaintiff merely needs to show that she was "restrained of [her] liberty under the probable imminence of force without any legal cause or justification therefore." Marschall v. City of Carson, 86 Nev. 107, 110, 464 P.2d 494, 497 (1970).  Defendants' improperly state that Plaintiff cannot prove her case as they had probable cause to detain. "It is well established that a plaintiff in a false arrest/false imprisonment case

need not prove lack of probable cause for arrest as part of [her] prima facie case." Garton v. Reno, 102 Nev. 313, 315 (Nev. 1986). Plaintiff has plead a sufficient basis to establish false imprisonment. The prior incident of an unlawful arrest and battery on March 17, 2008 by the security guards, the threats by the guards on March 21, 2008 banging their handcuffs in a threatening and menacing manner as a reminder to the prior handcuffing incident on March 17, 2008, prohibiting Plaintiff from leaving the hospital under the threat of force and holding her hostage in her father's ICU room, which is also supported by the 911 calls requesting police assistance to escort her so she could leave and subsequent use of the handcuffs as documented by the 911 calls from hospital staff all establish the primae facie elements of false imprisonment. On all the prior encounters the Plaintiff was allowed to leave. Even on the March 17, 2008 Plaintiff was threatened with potential trespass but was never formally trespassed but continued to allow her back onto the property is evidence that no trespass was ever formally made. The Plaintiff was never trespassed prior to March 21, 2008. The Plaintiff was never arrested for trespass at any time. (See Exhibit 1).

The United States Supreme Court has held that for probable cause to exist, the "facts and circumstances within the officers' knowledge at the time of the arrest must be sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed an offense." *See* Michigan v. DeFillipo, 433 U.S. 31, 99 S. Ct. 2627, 61 L.Ed.2d 343 (1979). Defendants did not have facts and circumstances within the their knowledge to believe that the Plaintiff had committed an offense, or a sufficient basis to make a practical, common sense decision that a "fair probability of crime existed." See Illinois v. Gates, 462 U.S. 213 (1983); Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968).

Joyce was the victim of a brutal physical assault by her brother who attacked her in her father's ICU unit requiring nursing staff to physically pull Steve off of the top of her. Joyce had not done anything wrong and had not committed an offense as she was lawfully on the premises when Danielle Pieper violated the standing order prohibiting her from being in the ICU room and the hospital staff's failure to remove Danielle from the room further escalating the situation. As there are genuine issues of fact in dispute as to whether there was probable cause the motion

for partial summary judgment must be denied.

### 3. Battery

Defendants contend there is nothing in the complaint to support the allegation of a battery against the MountainView Defendants. Defendants filed a motion to dismiss as well as a motion for partial summary judgment on this issue. Defendants' motion should be treated as a motion for summary judgment as there are factual issues and Defendants have referred to documents as part of their pleading. Plaintiff should be allowed sufficient time to amend to clarify the battery issue against the MountainView Defendants for their unlawful arrest and use of handcuffs to detain the Plaintiff prior to the arrival of LVMPD and the production of documents as part of Defendants motion to dismiss.

The elements for a cause of action for assault are:  1) Apprehension of a harmful or offensive contact, 2) intent of the tort feasor to create such apprehension; 3) lack of consent; and 4) damages. See Prosser & Keaton on Torts, 5th Ed. page 43 (1984) (see also Wright v. Starr, 42 Nev. 441, 179 P. 877 (1919) ("an assault implies force upon one side and repulsion or at least one of assent upon the other")

The elements for a cause of action for battery are as follows:  1) A harmful or offensive contact; 2) intent; 3) lack of consent; and 4) damages.  See Prosser & Keaton on Torts, 5th Ed. page 43 (1984) (see also Wright v. Starr, 42 Nev. 441, 179 P. 877 (1919) ("any unlawful beating or other wrongful physical violence or constraint inflicted upon a human being without consent").

The case law explicitly provides that any unlawful constraint without consent amounts to battery. Plaintiff has set forth facts demonstrating both an assault with the visible threat of use of handcuffs (i.e., banging handcuffs as Joyce walked to the elevator and the prior use of handcuffs on March 17, 2008) and the actual use of handcuffs without probable cause prior to the arrival of the police on March 21, 2008. From the perspective of the Plaintiff (the non-moving party) evidence a prima facie case of both assault and battery. Jurisdictions have recognized that no force is allowed where the initial action is unlawful. See Cox v. Treadway, 75 F.3d 233, 234 (6th Cir. 1996).

11

In <u>Ramirez v. City of Reno</u>, 925 F.Supp. 681 (D. Nev. 1996), it was held that police officers are allowed to use force which appears reasonably necessary, but when they use more force than is necessary they are liable for battery. <u>Id.</u> at 690-91.  In the case at hand the police Plaintiff had been confined to her father's hospital room and both parties had called 911.  Joyce had requested the police arrive so that she could be permitted to leave as the security guards were harassing her and would not let her leave her father's room.  It was not necessary for the security guards to use force and physically grab and handcuff the Plaintiff after their intimidation tactics.  The use of force in handcuffing the Plaintiff was made without the Plaintiff's consent who reasonably believed she had not done anything wrong as she was the victim of the attack by her brother and the hospital failed to intervene to remove Danielle Pieper from her room.

It is recognized law that an employer can be vicariously liable for punitive damages if the employer either expressly authorized or ratified the employee's wrongful conduct or the employer is personally guilty of oppression, fraud, or malice, express or implied. When the employer is a corporation, such as we have with MountainView,  the authorization, ratification, or oppression, fraud, or malice must be accomplished by an officer, director, or managing agent of the corporation who was expressly authorized to direct or ratify the employee's conduct. <u>Countrywide Home Loans, Inc. v. Thitchener</u>, 192 P.3d 243 (Nev. 2008).  There are factual issues that the conduct of the Defendants was ratified by the supervisors given the statements from the March 17, 2008 incident.  (See Exhibit 1).

Plaintiff respectfully requests that if there are any issues to be clarified as to any of the above claims for false imprisonment and for battery that she be allowed pursuant to Federal Rules of Civil Procedure (FRCP) Rule 15(a) to amend her complaint to clarify the issues as set forth herein under the relation back theory.  Plaintiff further requests to be able to amend her pleading to identify John Doe II as Maurice Daveu, based upon the Exhibit F to their motion.

Federal Rules of Civil procedure, Rule 15(a) provides as follows:

> (a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon trial calendar,

he may so amend it at any time within 20 days after it is served. **Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.** A party shall plead in response to an amended pleading within the time remaining for the response to the original pleading or within 10 days after service of the amended pleading whichever period may be the longer, unless the court otherwise orders. (Emphasis added)

(c) *Relation back of Amendments*. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

In the instant case Plaintiff seeks leave to amend the Complaint in order to clarify the battery issue as to the unlawful detention and handcuffing as well as to name Maurice Daveu who was identified in Exhibit F of Defendants' motion and who was previously identified as John Doe II in Plaintiff's Second Amended Complaint.

### III.
### CONCLUSION

Based upon the above, Plaintiffs respectfully request this Court deny the Defendants motion to dismiss and/or motion for partial summary judgment as to the causes of action for false imprisonment and battery against the MountainView Defendants or allow for a third amended complaint be filed to clarify any issues.

DATED this 10th day of January, 2011.

                                                POTTER LAW OFFICES

                                                By  /s/ John C. Funk, Esq.
CAL J. POTTER, III, ESQ.
Nevada Bar No.1988
JOHN C. FUNK, ESQ.
Nevada Bar No. 9255
1125 Shadow Lane
Las Vegas, Nevada  89102
*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that pursuant to FRCP5(b) on the 10th day of January, 2011, I did serve at Las Vegas, Nevada a true and correct copy of **PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT**, on all parties to this action by:

- ☐ Facsimile
- ☐ U.S. Mail
- ☐ Hand Delivery
- X Electronic Filing

Addressed as follows:

Craig R. Anderson, Esq.
MARQUIS AND AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
Ph:  (702) 382-0711
Fax: (702) 856-8913
*Attorneys for Defendants LVMPD,*
*B. Eager, & T. Frederick*

Michael E. Prangle, Esq.
Casey W. Tyler, Esq.
HALL, PRANGLE, & SCHOONVELD, LLC
777 Rainbow Blvd., Ste. 225
Las Vegas, NV 89107
Ph:  (702) 889-6400
Fax: (702) 384-6025
*Attorneys for Defendant Sunrise*
*MountainView Hospital*

Richard E. Tanasi, Esq.
CHRISTIANSEN LAW OFFICES
9910 West Cheyenne Avenue, Suite 110
Las Vegas, NV  89129
Ph:  (702) 240-7979
Fax: (702) 658-3848.
*Attorneys for Danielle K. Pieper*

Raymond G. Gates, Esq.
Anthony D. Lauria, Esq.
LAURIA TOKUNADA
GATES & LINN, LLP
1775 Creekside Oaks Drive, Suite 240
Sacramento, CA 95833
Ph:  (916) 492-2000
Fax: (916) 492-2500
*Attorneys for Danielle K. Pieper*

                                   /s/ John C. Funk
                                   An Employee of POTTER LAW OFFICES