MICHAEL E. PRANGLE, ESQ.
Nevada Bar No.: 8619
CASEY W. TYLER, ESQ.
Nevada Bar No. 9706
HALL PRANGLE & SCHOONVELD, LLC
777 N. Rainbow Blvd., Ste. 225
Las Vegas, NV 89107
(702) 889-6400 – Office
(702) 384-6025 – Facsimile
mprangle@hpslaw.com
ctyler@hpslaw.com
*Attorneys for Defendants*
*Sunrise Mountain View Hospital, Inc., d/b/a*
*Mountain View Hospital, Neal Millot and Christopher Simms*

# UNITED STATES DISTRICT COURT

## STATE OF NEVADA

| | |
|---|---|
| JOYCE ZAIC,<br><br>Plaintiffs,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the STATE OF NEVADA; DANIELLE PIEPER, individually; B. EAGER, P#6189, individually and in his official capacity as a police officer; T. FREDERICK, P#9793, individually and in his office capacity as a police officer; SUNRISE MOUNTAINVIEW HOSPITAL, INC.; NEAL, security guard for MOUNTAINVIEW HOSPITAL; CHRISTOPHER SIMMS, security guard for MOUNTAINVIEW HOSPITAL; JOHN DOES I through X, and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | CASE NO. 2:10-cv-01814-PMP-LRL |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, by and through their attorneys of record, the law firm of HALL PRANGLE & SCHOONVELD, LLC, hereby files this Motion for Summary Judgment pursuant to FRCP 56, NRS 200.460, NRS 200.400 and applicable precedent.

This Motion is made and based upon the pleadings, the Memorandum of Points and Authorities and exhibits that follow, and any oral argument of counsel that may be heard at the time of hearing of this motion.

DATED this 16 day of June, 2011.

HALL PRANGLE & SCHOONVELD, LLC

By: /s/: Casey W. Tyler, Esq.
MICHAEL E. PRANGLE, ESQ.
Nevada Bar No.: 8619
CASEY W. TYLER, ESQ.
Nevada Bar No. 9706
HALL PRANGLE & SCHOONVELD, LLC
777 N. Rainbow Blvd., Ste. 225
Las Vegas, NV 89107
(702) 889-6400 – Office
(702) 384-6025 – Facsimile
mprangle@hpslaw.com
ctyler@hpslaw.com
*Attorneys for Defendants*
*Sunrise Mountain View Hospital, Inc., d/b/a*
*Mountain View Hospital, Neal Millot and Christopher Simms*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The foregoing motion asks for the following relief:

1. Summary judgment on Plaintiff's Conspiracy claim;

2. Summary judgment on Plaintiff's Battery claim;

3. Summary Judgment on Plaintiff's False Imprisonment claim; and,

4.  Summary judgment on Plaintiff Negligence and Intentional Infliction of Emotional Distress claims.

As the argument below shows, and confirmed by Plaintiff herself during deposition as well as applicable affidavit, summary judgment, as a matter of law, is appropriate for all of the above identified causes of action.

## II.

## STATEMENT OF FACTS

This matter arises from an incident that occurred on March 21, 2008, involving Plaintiff, Joyce Zaic (hereinafter Plaintiff), her brother Steve Zaic, and Defendants, Sunrise Mountain View Hospital, Inc., d/b/a Mountain View Hospital, Neal Millot and Christopher Simms (hereinafter Defendants) at Mountain View Hospital in Las Vegas, Nevada, where her father was in the intensive care unit.

On several occasions leading up to the subject incident, Plaintiff was involved in numerous arguments with Defendants' staff and displayed several instances of erratic behavior. In fact, medical records and security logs document incidents in March, 2008, on 3/1; 3/2; 3/3; 3/5; 3/7; 3/9; 3/11; 3/12; 3/13; 3/14; 3/15; 3/17; 3/18 and 3/21.  This included at least three incidents with Metro, beginning March 7, 2008, when Plaintiff was accused of "Larceny from Person", as she allegedly stole a cell phone from her brother and refused to return it. Eventually the behavior became so outrageous that the nursing staff was forced to limit Plaintiff's visiting hours and only allow her to visit for five minutes at a time twice per day. Despite this, Plaintiff was again escorted out of the building on March 17, 2008, at which time she was formally trespassed by Metro and banned from the hospital. In the event Plaintiff returned the staff was advised not to confront her and to call the police immediately.

On the date relevant for her Complaint, March 21, 2008, Plaintiff was visiting her father Frank Zaic, who was being treated at Mountain View. Her brother, Steven Zaic, and his girlfriend, Defendant Danielle Pieper (hereinafter Pieper), were there as well. According to Plaintiff's complaint, Plaintiff demanded that Pieper leave the room in accordance with a standing order that only family members be present in the ICU. Plaintiff and Pieper began to argue at which point Plaintiff and Steven Zaic became involved in a physical altercation requiring security to become involved. According to Plaintiff, she began to leave the hospital, at which time, due to the many previous instances discussed above, Defendants followed Plaintiff to ensure that she actually left the building. Instead of leaving the premises she insisted on returning to the ICU. Defendants then called the police to report the incident. Upon arrival the police arrested Plaintiff and transported her to the Clark County Detention Center.

In November these Defendants filed a *Motion to Dismiss and for Partial Summary Judgment* which resulted in dismissal of Plaintiff's battery and malicious prosecution claims, with leave to amend Plaintiff's complaint to further plead the battery cause of action. See Exhibit A, Order. Based upon this ruling, Plaintiff filed her currently pending *Third Amended Complaint* which alleges causes of action against MountainView and its security guards for assault and battery, negligent and intentional infliction of emotional distress, civil conspiracy, respondeat superior, negligent hiring/supervision, and false imprisonment. Despite filing such amended complaint, discovery has revealed that the battery claim itself, along with those additional claims identified herein, can not possibly constitute a viable cause of action, thereby demanding summary judgment on those issues.

. . .

. . .

## III.

## ARGUMENT

A.  <u>Summary Judgment is appropriate for a portion of Plaintiff's claims against Defendants.</u>

1. **Standard of review.**

The moving Defendants are entitled to summary judgment on Plaintiff's Conspiracy, False Imprisonment, Battery, Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress claims pursuant to FRCP 56. The purpose of the summary judgment procedure is to obviate trials when they would serve no useful purpose. <u>Short v. Riviera, Inc.</u> 79 Nev. 94, 378 P.2d 979 (1963); <u>Corey v. Hom</u> 80 Nev. 39, 389 P.2d 76 (1964). It does not involve resolution of factual issues, but seeks to discover if any real issue of fact exists. <u>Daugherty v. Wabash Life Insurance Co.</u> 87 Nev. 32, 482 P.2d 814 (1971). Summary judgment proceedings pierce the formality of the pleadings and test whether, based on the uncontroverted facts, one party is entitled to judgment as a matter of law. <u>Dredge Corp. v. Husite Co.</u> 78 Nev. 69, 369 P.2d 676 *cert. denied* 371 U.S. 821 (1962); <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u> 475 U.S. 574 (1986). A party seeking summary judgment must satisfy two (2) substantive requirements: (1) There must be no genuine issue as to any material fact; and (2) The moving party must be entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242, 247 (1985). A material fact is one which will affect the outcome of the action. <u>Id.</u> at 248.

. . .

### 2. Summary judgment denying Plaintiff's cause of action for false imprisonment is appropriate as her sworn testimony shows she chose to return and remain in her father's room until metro arrived.

Plaintiff alleges that Defendants would not let her leave the ICU, however, her recent deposition shows the contrary.

> Q: After you went to the elevator was—did you decide you wanted to go back to your dad's room?
> A: Yes.
> Q: And you went back there on your own?
> A: Yes.
> Q: And you waited there on you own, then, until metro arrived; is that right?
> A: Yes.
> Q: Did anybody force you to stay in your dad's room?
> A: Security, they forced me. They wouldn't let me—they wouldn't let me go anywhere without them following me.
> Q: But it was your choice to go back to your dad's room, though; right? Is that what you are telling me?
> A: Yes.
> Q: So it wasn't security that said you have to go wait in your dad's room?
> A: No.
> Q: And did they force you—did they bar the door and force you to stay in your dad's room after that until Metro arrived?
> A: They did not bar the door, no.
> Q: And that's where you wanted to be, was with your dad at that point?
> A: I went to my dad's room to call the police because the security guards were harassing me.

Exhibit B, Deposition of Joyce Zaic, p. 167-168, lns 12-25, 1-16.

Such testimony runs directly contrary to the allegations of the unverified *Third Amended Complaint* and entirely undermines her false imprisonment cause of action. Consider precedent holding:

> Submission to mere verbal direction of another unaccompanied by force or threats of any character does not constitute false imprisonment. Lerner Shops v. Marin, 83 Nev. 75, 423 P.2d 398 (1967); NRS 200.460(1).

Moen v. Las Vegas Intern. Hotel, Inc. 90 Nev. 176, 177, 521 P.2d 370, 371 (1974).

> False imprisonment is a restraint of one's liberty without any sufficient cause therefor. Zayre of Virginia, Inc. v. Gowdy, 207 Va. 47, 147 S.E.2d 710 (1966). As defined in NRS 200.460 false imprisonment (as a crime) is an unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority. It is generally acknowledged that submission to the mere verbal direction of another, unaccompanied by force or threats of any character, does not constitute false imprisonment. Grayson Variety Store, Inc. v. Shaffer, 402 S.W.2d 424 (Ky.1966). . . The restraint of freedom must be against the plaintiff's will and the intent to confine is an essential element.

<u>Lerner Shops of Nev., Inc. v. Marin</u> 83 Nev. 75, 78-79, 423 P.2d 398, 400-401(1967).

Here Plaintiff freely admits in her sworn testimony that she was not forced to remain in the room and that such retreat to her father's room was actually her choice, not against her will. Given this reality, as a matter of law, she can not possibly show the prima facie elements of false imprisonment and summary judgment on this claim is appropriate.

3. **Plaintiff's cause of action for battery must be dismissed as Defendants made no contact with Plaintiff.**

NRS 200.400(a) defines battery as any willful and unlawful use of force or violence upon the person of another. Thus, to sustain a claim for Battery, defendant must have caused a physical touching upon Plaintiff. As pointed out in Defendants' earlier motion to dismiss, Plaintiff's verified discovery responses and earlier pleadings contained no such allegation of any contact or physical force. See Exhibit C, Plaintiff's Interrogatory Responses. Accordingly, this Court dismissed such claim, while allowing Plaintiff leave to re-plead such contact in the form of a third amended complaint. The resulting complaint, that currently before this Court, alleges in paragraphs 44-47 that the security guards handcuffed Plaintiff before Metro arrived. This is plainly false given Plaintiff's deposition testimony and arguably borders on a FRCP 11 sanction.

. . .

> Q: In your testimony today and in you discovery responses you describe on the day of the incident the security guards walking closely behind you on the way to the elevator. At no point do I see any physical contact that was made until you filed your amended complaint. Was there actually any physical contact during that time frame?
> A: I don't recall

Exhibit B, p. 173-174, lns 20-25, 1-3.

> Q: Once your brother tackled you and took you to the ground, at what point did you have interaction with security again?
> A: When they followed me—were following me through the hospital and into the elevator.
> Q: And at this point they didn't actually have a hold of you or have you handcuffed; is that correct?
> A: Correct.
> Q: They were just following closely behind you?
> A: Yes.
> Q: Did they actually use any physical force on you as you went to the elevator?
> A: I don't recall.
> Q: Is there any that you remember during that time frame?
> A: I don't recall.

Exhibit B, p. 165-166, lns 13-25, 1-5.

Given the lack of any physical contact upon Plaintiff, a necessary element under NRS 200.400, Defendants' Motion for Summary Judgment on Plaintiff's allegation of Battery should be granted.

    **4.** **Plaintiff's conspiracy claim can not possibly survive as it fatally relies upon employees acting in their scope of duty as its players.**

Plaintiff alleges that the security guards, nurses and administrative staff of MountainView, while explicitly acting as agents and employees in their scope of duty, together with Danielle Pieper, formed a civil conspiracy to violate her rights in numerous manners. In reality, Danielle Pieper never had any interaction with any MountainView employees during the applicable hospitalization though, leaving only the employees as part of the conspiracy. See

Exhibit D, Affidavit of Danielle Pieper. Case law holds that a conspiracy can not be formed through such employees, however, as it must include other outside persons.

> An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. Wise v. Southern Pacific Co., 223 Cal.App.2d 50, 35 Cal.Rptr. 652 (Cal.App.1963); Bliss v. Southern Pacific Co., 212 Or. 634, 321 P.2d 324 (Or.1958). Collins alleged that the respondents conspired with one another and with each or all of the prospective purchasers of the Reef Hotel to induce the prospective purchasers not to purchase or lease the Reef Hotel from Collins. The respondents, at that time, were First Federal and three of its officers, Dwyer, Wholey and Small. **Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage. Wise, 35 Cal.Rptr. at 665; Bliss, 321 P.2d at 328–329. If Dwyer, Small and Wholey were not acting as individuals for their individual advantage, no unlawful combination of persons would exist, upon which Collins could premise his claim of civil conspiracy. Thus, one of the material issues of fact regarding Collins' civil conspiracy claim for relief is whether Dwyer, Wholey and Small were acting as individuals for their individual advantage.**

<u>Collins v. Union Federal Sav. & Loan Ass'n</u> 99 Nev. 284, 303, 662 P.2d 610, 622 (1983) (emphasis supplied).

Plaintiff is unequivocal in the conspiracy cause of action itself, her respondeant superior claim and throughout her Complaint that the MountainView employees were acting in their capacity as employees. There can thus be no conspiracy given that Danielle Pieper clearly did not have any relationship with the applicable MountainView employees before, during or after the subject incident. Summary Judgment is warranted as a matter of law.

  5. **Plaintiff's NIED and IIED claims are ripe for summary judgment.**

A cause of action for negligent infliction of emotional distress is only recognized "for serious emotional distress which results in physical symptoms caused by apprehending the death or serious injury of a loved one due to the negligence of the defendants." State v. Eaton, 101 Nev.705, 716, 710 P.2d 1370, 1378 (1985), *overruled on other grounds*. Furthermore, the plaintiffs "must prove the defendants' negligence was the proximate cause of the harm to the

victim." Id. at 714, 1376. The *Eaton* court went on to adopted a three-part test for the determination of whether the emotional distress claimed is reasonably foreseeable:

> (1) Whether the plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.
>
> (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident as contrasted with learning of the accident from others after its occurrence.
>
> (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

Eaton at 716, 1377-778 (citations omitted).

Subsequent case law interpreting *Eaton* and related precedent has gone on to hold that a Plaintiff must demonstrate sufficient "impact" as a result of the alleged emotional distress in order for a claim to survive. One such example is *Chowdry v. NLVH, Inc.* where a doctor brought suit for negligent infliction of emotional distress in relation to alleged defamatory statements placed in his file. 109 Nev. 478, 483 (1993). The doctor claimed insomnia and general physical distress as the physical symptoms of his negligent infliction of emotional distress claim. The court ruled that insomnia and general physical or emotional distress were insufficient to satisfy the physical impact requirement under *Eaton*. This holding is not isolated either, as applicable precedent confirms much the same.

> We therefore hold that, in cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of "serious emotional distress" causing physical injury or illness must be presented.

Olivero v. Lowe 116 Nev. 395, 399, 995 P.2d 1023, 1026 (2000).

With this in mind, it is clear Plaintiff has failed to articulate "impact" sufficient for her cause of action to survive. She testified:

> Q: You indicated that you have suffered emotional distress as a result of this incident; is that correct?
> A: Yes.
> Q: Have you ever visited a doctor?
> A: Not because of this, no.
> Q: Have you --have you ever been prescribed medication because of this incident?
> A: No.
> Q: Have you ever lost sleep?
> A: Yes.
> Q: Do you regularly lose sleep over this incident?
> A: Yes.
> Q: What other emotional distress have you suffered?
> A: The loss of my father. He'll never be here.
> Q: But you've never visited a doctor, been prescribed medication?
> A: No.

Exhibit B, p. 99-100, lns 9-25, 1-4.

In pointing out that nothing more than periodic insomnia has resulted, which appears more related to her father's passing than any interaction with the Defendants, Plaintiff's own testimony confirms she can not show sufficient "impact" to allow her to proceed with a Negligent Inflection of Emotional Distress claim. Accordingly, this lack of "impact", whether injury or illness, shows summary judgment is appropriate.

This rationale extends even more so to her Intentional Inflection of Emotional Distress claim.

> To recover for the intentional infliction of emotional distress, a plaintiff must establish the following elements: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress. Star v. Rabello, 97 Nev. 124, 625 P.2d 90 (1981). Recovery by a third party witness to the outrageous act is allowed if the third party is a close relative of the person against whom the outrage is directed. Most third party recoveries have been allowed where the defendant's conduct was not only outrageous but unquestionably violent and shocking. Id.; Prosser, Handbook

of the Law of Torts § 12 at 62 (4th ed. 1971). The less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress. See Prosser, supra, at 60.

<u>Nelson v. City of Las Vegas</u> 99 Nev. 548, 555, 665 P.2d 1141, 1145 (1983).

Here Ms. Zaic's testimony shows such claim fails on its face given that she can not show the required element that she suffered from severe or extreme emotional distress. This is, of course, in addition to the fact that her version of events, even if accepted as true, can not possibly be considered "extreme and outrageous" as her earlier summarized testimony shows that at most the MountainView staff walked closely behind her on the way to the elevator during the relevant events. Exhibit B, p. 165-166, lns 13-25, 1-5, as well as generally.  Summary judgment is appropriate and warranted on this claim as well.

. . .

. . .

. . .

. . .

. . .

. . .

## IV.

## CONCLUSION

Defendants ask that summary judgment, with prejudice, be entered against Plaintiff's claims for Conspiracy, False Imprisonment, Battery, Negligent Infliction of Emotional Distress and Intentional Inflection of Emotional Distress as shown necessary and appropriate by the arguments made herein above.

DATED this 16 day of June, 2011.

HALL PRANGLE & SCHOONVELD, LLC

By: /s/: Casey W. Tyler, Esq.
MICHAEL E. PRANGLE, ESQ.
Nevada Bar No.: 8619
CASEY W. TYLER, ESQ.
Nevada Bar No. 9706
HALL PRANGLE & SCHOONVELD, LLC
777 N. Rainbow Blvd., Ste. 225
Las Vegas, NV 89107
(702) 889-6400 – Office
(702) 384-6025 – Facsimile
mprangle@hpslaw.com
ctyler@hpslaw.com
*Attorneys for Defendants*
*Sunrise Mountain View Hospital, Inc., d/b/a*
*Mountain View Hospital, Neal Millot and Christopher Simms*

...

...

...

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that I am an employee of HALL PRANGLE & SCHOONVELD; that service of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was made on the 16 day of June, 2011 via U.S. Mail, first class postage pre-paid to the following parties at their last known address:

Cal J. Potter, III, Esq.
Nevada Bar NO. 1988
John C. Funk, Esq.
Nevada Bar No. 9255
Potter Law Offices
1125 Shadow Lane
Las Vegas, Nevada 89102
*Attorneys for Plaintiff*

Craig R. Anderson, Esq.
Marquis & Dubach
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for Las Vegas Metropolitan Police Department;*
Officer B. Eager, #6189 and
Officer T. Frederick, #9793

Raymond Gates, Esq.
Lauria, Tokunaga, Gates & Linn, LLP
1755 Creekside Oaks Drive, Suite 240
Sacramento, California  95833
*Attorneys for Danielle Pieper*

　　　　　　　　/s/: Audrey Ann Stephanski
　　　　　　　　An employee of HALL PRANGLE & SCHOONVELD, LLC

4844-7401-9593, v. 1