CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada  89102
Ph:  (702) 385-1954
Fax: (702) 385-9081
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

**

| | |
|---|---|
| JOYCE ZAIC, | CASE NO.:    2:10-cv-01814-PMP-GWF |
| Plaintiff, | |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT a political subdivision of the STATE OF NEVADA; DANIELLE PIEPER, individually; B. EAGER, P#6189, individually and in his official capacity as a police officer; T. FREDERICK, P#9793, individually and in his official capacity as a police officer; SUNRISE MOUNTAINVIEW HOSPITAL, INC.; NEAL, security guard for MOUNTAIN VIEW HOSPITAL; CHRISTOPHER SIMMS, security guard for MOUNTAIN VIEW HOSPITAL; JOHN DOES I through X, and ROE CORPORATIONS I through X, inclusive; | **PLAINTIFF'S OPPOSITION TO DEFENDANT SUNRISE MOUNTAINVIEW HOSPITAL'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

COMES NOW, the Plaintiff, JOYCE ZAIC, by and through her attorneys of record, CAL J. POTTER, ESQ., of POTTER LAW OFFICES and hereby files their Opposition to Defendant Sunrise Mountainview Hospital's Motion for Summary Judgement.

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      This Motion is made and based upon the following Points and Authorities below, all pleadings and papers on file and any oral arguments that may be entertained at the hearing of this matter.

      DATED this 10th day of July, 2011.

POTTER LAW OFFICES

By /s/ Cal J. Potter, III, Esq.
CAL J. POTTER, III, ESQ.
Nevada Bar No.1988
1125 Shadow Lane
Las Vegas, Nevada  89102
*Attorneys for Plaintiff*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**FACTS**

      On March 21, 2008 Joyce Zaic was visiting her father at MountainView hospital in room 229 of the Intensive Care Unit, Unit number 3. Joyce would visit her father, Frank Zaic, every day from the time he was admitted to the hospital on February 29, 2008. (Exhibit 1 - Plaintiff's Responses to LVMPD Interrogatories). Joyce was listed on her father's MountainView hospital admittance records as his next of kin and his only daughter. (Id).  She was also identified as the primary contact person in case of an  emergency. Joyce had lived with, and taken care of, her father for over 40 years. Joyce's father was in the Intensive Care Unit at MountainView hospital where he was in critical condition. (Id). There was a strict standing physician's order in place for Joyce's father's room which stated there were absolutely no visitors to be allowed into Frank's room other than his children. (Id). On March 21, 2008, Joyce was sitting at the foot of her father's bed around 8:00 p.m. when her brother Steve Zaic entered the father's ICU room with Defendant Danielle Piper whom Joyce had never seen or met before. (Id).

      Joyce was concerned as to why this individual was in her father's room while he was in critical condition and reminded her and her brother of the standing hospital order allowing only family in the room because her father did not need additional stress. (Id). Danielle was informed

1  of the standing order which prohibited her from being in the ICU room but she would not leave.

2  (Id). Joyce asked Danielle to leave multiple times as Frank was in critical condition and needed

3  his rest. (Id).

4      Joyce's brother Steve became upset with Joyce for telling Danielle to leave and rushed

5  towards Joyce who attempted to run towards the door to leave the room believing her brother

6  was going to attack her. (Id). Steve caught Joyce before she could leave her father's ICU room

7  and pushed her to the ground and restrained her arms behind her back while Danielle watched the

8  entire event and did not intervene. (Id). Several nurses witnessed the altercation as they rushed

9  into the ICU and pulled Joyce's brother off the top of her. (Id).

10     As Joyce attempted to exit the hospital the security guards walked closely behind the

11 Plaintiff in a threatening manner. (Id). The guards walked so closely to Plaintiff that they made

12 physical contact by brushing against her. (Id at pg. 3 ln 27-28 ; and, pg. 7, ln. 24-26). Joyce went

13 to the elevator, but the two security Defendants followed her inside of the elevator. (Id). Fearing

14 for her safety and trying to get away from the Defendants Joyce rushed back to her father's room

15 where the security guards continued to follow and continued to harass her. (Id). The security

16 guards would not let her leave the room(Id at pg. 3 ln 27-28). Joyce called 911 from inside of her

17 father's ICU room, reported the harassment of the security guards, and requested the police to

18 come to escort her to her vehicle. (Id). All of these statements were recorded. (Id). A subsequent

19 phone call made to dispatch stated the security guards had hand cuffed Joyce who was upset. (Id).

20 The LVMPD officer arrived and Joyce was then allowed to walk out of her father's ICU room

21 where Defendant Officer Frederick told her that the hospital did not want her in the hospital. (Id).

22     The police officer went to talk to Danielle and Steve who wanted to arrest Joyce for

23 domestic violence. (Id). The police officer told them he was not going to arrest Joyce as there

24 were no witnesses, no bruises and no proof that a battery took place by Joyce on her brother or

25 Danielle. (Id). Plaintiff alleges that despite not having evidence Officer Frederick allowed

26 Danielle Pieper to make a citizens arrest after advising Joyce she had not done anything wrong as

27 part of his investigation. (Id). Joyce was not arrested for trespass but was arrested based upon the

28 citizen's arrest made at the request of Danielle. (Id). Officer Frederick arrested Joyce and placed

1   handcuffs on her and she was taken to jail; she was released from jail approximately 17 hours

2   later. (Id).

### II.

### ARGUMENT

**A.   Standard for Motions for Summary Judgment**

Summary judgment is appropriate only if all available facts show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56.  A genuine issue of fact exists if the evidence is such that a reasonable jury could resolve the issue in either parties favor and "an issue is material if it essential to the proper disposition of the claim." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The Court must examine all of the evidence, and all reasonable inferences, in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L.Ed. 202 (1986); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)

If any genuine issue of material fact appears to the trial court, it is not the function of the trial court to weigh evidence on that issue.  Even if the weight or believability of the evidence is clearly in favor of one party, the other party is entitled to a trial by jury to determine the facts. See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986).

**B.   False Imprisonment**

An individual is liable for the tort of false imprisonment if: (1) he or she act intending to confine the other or a third person within boundaries fixed by the actor; (2) his or her acts directly or indirectly results in such a confinement of the other; and (3) the other is conscious of the confinement or is harmed by it. Switzer v. Rivera, 174 F. Supp. 2d 1097, 1110 (D. Nev. 2001).

Here, the record demonstrates that there is a genuine issue of material fact as to whether the hospital security guards confined Ms. Zaic in her father's ICU room because Ms. Zaic testified that she told the 911 dispatcher that the security guards would not let her leave her father's hospital room. (Ex. 1, at pg. 3, ln. 26-28). Ms. Zaic's testimony establishes that she was

1  confined by the security guards within a hospital room and that she was conscious of the

2  confinement. The security guard's intent in confining Ms. Zaic is an issue of fact to be

3  determined by a jury. Therefore, summary judgment is improper as to Ms. Zaic's false

4  imprisonment claim.

5      Defendant's argue in their Motion that Plaintiff has not raised a genuine issue of material

6  fact with regard to her false imprisonment claim because Plaintiff testified that she voluntarily

7  entered her father's room. However, Defendant's argument misapprehends the elements of false

8  imprisonment. Here, the false imprisonment of Ms. Zaic occurred when Joyce was prevented

9  from leaving the hospital room. Consequently, Joyce was confined within an enclosed space for

10  an appreciable amount of time when she was prevented from leaving her father's hospital room.

11  The mere presence of uniformed guards constitutes a use of force.

12      Defendant's argument also mischaracterizes Ms. Zaic's deposition testimony. In the

13  portion of her deposition testimony, which Defendant cites in its Motion, Ms Zaic testified as

14  follows:

15      (Mr. Tyler) Q:      Did anybody force you to stay in your dad's room?
16      (Ms. Zaic) A:       Security, they forced me . . .
        . . .
17      (Mr. Tyler) Q:      Did they bar the door and force you to stay in your dad's room . . .
        (Ms. Zaic) A:       They did not bar the door, no.

18

19      Ms. Zaic's deposition testimony neither contradicts nor "entirely undermines her false

20  imprisonment cause of action." The fact that multiple uniformed security guards did not "bar the

21  door" does not mean that Ms. Zaic voluntarily remained in the room. Therefore, Summary

22  judgment is improper as to Ms. Zaic's false imprisonment claim because Ms. Zaic's testimony

23  raised a genuine issue of material fact concerning her false imprisonment.

24  **C.    Battery**

25      [The tort] battery is the unlawful touching or striking of the person of another by the

26  aggressor himself or by any other substance put in motion by him. Restatement, Torts § 21 (1). If

27  defendant officers stand by while an individual is battered by other officers a jury could

28  reasonably believe that the defendant officers were participants in the battery. See e. g.

Rutherford v. City of Berkeley; 780 F.2d 1444 (9th Cir., 1986).

Here, Plaintiff testified that the security guards walking so close behind Plaintiff that the guards were brushing up against her. (Ex. 1, at pg. 3, ln. 26-27; pg. 7, ln 24-26). Plaintiff also testified that she was handcuffed and placed in a police car. (Ex. 1 at pg. 4, ln 23). Therefore, Plaintiff's Testimony raises a genuine issue of material fact as to whether a battery occurred because Zaic has testified that the guard brushed against her. Additionally, jurors could reasonably believe that the guards were participants in the battery which occurred when Zaic was handcuffed and placed in a police car.

**D.    Intentional Infliction of Emotional Distress and  Negligent Infliction of Emotional Distress**

The elements of an intentional infliction of emotional distress ("IIED") claim are "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." Star v. Rabello, 97 Nev. 124, 625 P.2d 90, 91-92 (Nev. 1981)

The only difference between an IIED claim and a claim for negligent infliction of emotional distress ("NIED") is the "intent" element. To state a claim for NIED, Plaintiff must show that the Defendants acted negligently rather than intentionally or with reckless disregard. State ex rel. Dept. of Transp. v. Hill, 114 Nev. 810, 815-16, 963 P.2d 480 (1998), *overruled on other grounds*, Grotts v. Zahner, 115 Nev. 339, 989 P.2d 415 (1999).

Here, the Defendant intentionally and negligently inflicted emotional distress upon Ms. Zaic. Defendants had a duty to protect the Plaintiff and the order of the hospital facility. Instead, Defendants engaged in actions to vex and annoy the Plaintiff in an extended pattern of conduct while the Plaintiff's father was dying in their hospital.

**E.    Conspiracy**

To state a claim for conspiracy, Plaintiffs must demonstrate a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and that damage has resulted from said act or acts. See Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 109 Nev. 1043, 862 P.2d 1207, 1210 (Nev. 1993).

1    It is unlikely that direct evidence of a conspiracy exists. Thus the question of whether an

2    agreement exists should not be taken from the jury so long as there is a possibility that the jury

3    can infer from the circumstances [that the alleged conspirators] reached an understanding to

4    achieve the conspiracy's objectives. An express agreement among all the conspirators in not a

5    necessary element of a civil conspiracy. <u>Hampton v. Hanrahan</u>, 600 F.2d 600, 620-624 (7th Cir.

6    1979). *cert. granted in part, judgment rev'd in part on other grounds*, 446 U.S. 754, 100 S. Ct.

7    1987 (1980); See also <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 90 S. Ct. 1598 (1970); Jones

8    v. City of Chicago, 856 F.2d 985 (7th Cir. 1988).

9    Here, the hospital staff, guards, police officers and Pieper conspired to deprive Zaic's

10   Fourth and Fourteen Amendment rights and Zaic suffered actual harm when Zaic was unlawfully

11   arrested and had false criminal charges against her. Therefore, a reasonable juror could infer that

12   the alleged conspirators reached an understanding to achieve the objective of  depriving Zaic of

13   her Fourth and Fourteen Amendment rights and killing Zaic's father. Consequently, the question

14   of whether an agreement exists should not be taken from the jury.

### III.

### <u>CONCLUSION</u>

17   Summary judgment is improper because there exist genuine issues of material fact.

18   Accordingly, Defendants' Motion should be denied.

19   DATED this 10th day of July, 2011.

20                                                                POTTER LAW OFFICES

22   By /s/ Cal J. Potter, III, Esq.
     CAL J. POTTER, III, ESQ.
     Nevada Bar No. 1988
     1125 Shadow Lane
     Las Vegas, Nevada   89102
     *Attorneys for Plaintiff*

7

## CERTIFICATE OF SERVICE

     Pursuant to FRCP 5(b), I certify that I am an employee of POTTER LAW OFFICES, and that, on this 10th day of July, 2011, I sent and filed electronically through the CM/ECF filing, a true copy of the **PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT SUNRISE MOUNTAINVIEW HOSPITAL'S MOTION FOR SUMMARY JUDGMENT** via electronic service addressed to:

 

 

_____/s/ C. J. Potter_____

An Employee of POTTER LAW OFFICES
