1    **RSPN**
CAL J. POTTER, III, ESQ.
2    Nevada Bar No.1988
JOHN C. FUNK, ESQ.
3    Nevada Bar No. 9255
POTTER LAW OFFICES
4    1125 Shadow Lane
Las Vegas, Nevada  89102
5    (702) 385-1954
*Attorneys for Plaintiff*

6

7                  **UNITED STATES DISTRICT COURT**

8                      **STATE OF NEVADA**

9                          ✦✦✦

10    JOYCE ZAIC,                    )   CASE NO.:    2:10-cv-01814-PMP-LRL

11             Plaintiff,          )

12             v.                   )

13    LAS VEGAS METROPOLITAN POLICE   )
DEPARTMENT a political subdivision of   )
14    the STATE OF NEVADA; DANIELLE    )
PIEPER, individually; B. EAGER, P#6189, )
15    individually and in his official capacity as a )
police officer; T. FREDERICK, P#9793,   )
16    individually and in his official capacity as a )
police officer; SUNRISE           )
17    MOUNTAINVIEW HOSPITAL, INC.;    )
NEAL, security guard for MOUNTAIN   )
18    VIEW HOSPITAL; CHRISTOPHER    )
SIMMS, security guard for MOUNTAIN   )
19    VIEW HOSPITAL; JOHN DOES I through )
X, and ROE CORPORATIONS I through X, )
20    inclusive;                     )
                                     )
21             Defendants.        )
   _____ )

22

23      **PLAINTIFF'S RESPONSES TO DEFENDANT LAS VEGAS METROPOLITAN**

     **POLICE DEPARTMENT, B. EAGER AND T. FREDERICK'S INTERROGATORIES**

24

25    TO:    Defendant, LAS VEGAS METROPOLITAN POLICE DEPARTMENT, B. EAGER and
          T. FREDERICK;

26    TO:    CRAIG R. ANDERSON, ESQ. of MARQUIS & AURBACH, their attorneys.

27           COMES NOW, the Plaintiff, JOYCE ZAIC, by and through her counsel, CAL J. POTTER,

28    III, ESQ. and JOHN C. FUNK, ESQ., of POTTER LAW OFFICES, and produces Plaintiff's

Answers to Defendant Las Vegas Metropolitan Police Department's Interrogatories as follows:

**PRELIMINARY STATEMENT**

Plaintiff, JOYCE ZAIC, has not yet completed her discovery and investigation for the preparation of this case for trial. Accordingly, the answers set forth herein are provided without prejudice to the responding party's right to produce any subsequent discovered facts or interpretations thereof and/or to add, modify or otherwise change or amend the answers herein. The information hereinafter set forth is true and correct to the best of the Plaintiff's knowledge at this particular time, but is subject to correction for inadvertent errors or omission, if any, such error or omissions are found to exist.

**INTERROGATORIES**

**INTERROGATORY NO. 1:**

State you full name, address and date of birth.

**ANSWER TO INTERROGATORY NO. 1:**

Joyce Marilyn Zaic; 4116 Rubidoux Dr., Las Vegas, NV 89108; DOB: February 2, 1968.

**INTERROGATORY NO. 2:**

State whether you have ever been convicted of or pled guilty to a felony or offence which was punishable by death or imprisonment for one (1) year or more or involved dishonesty or false statements. If you answer in the affirmative, please state the nature of the crime, date of the conviction, title of the court in which the conviction is on file and the sentence you received.

**ANSWER TO INTERROGATORY NO. 2:**

Objection. This Interrogatory is not reasonably calculated to lead to discoverable evidence. Without waiving said objection. Plaintiff answers as follows: I have never been convicted of a felony.

**INTERROGATORY NO. 3:**

List in chronological order the addresses at which you have resided in the past five (5) years, indicating the approximate dates at each address commencing with the present.

**ANSWER TO INTERROGATORY NO. 3:**

My address for the past 5 years is; 4116 Rubidoux Dr., Las Vegas, NV 89108.

**INTERROGATORY NO. 4:**

With specificity, and in narrative form, please state your recollection of the events of March 21, 2008, beginning with you entering Mountain View Hospital and ending with you arriving home following the arrest.

**ANSWER TO INTERROGATORY NO. 4:**

On 3/21/08 I was visiting my father at Mt. View hospital as I did every day from the time he was admitted into the hospital on 2/29/08. I was sitting in the chair at the foot of his bed, when at approximately 8:00pm my older brother Steve Zaic walked into the hospital room along with a girl which I never seen before in my life. I stood up from the chair and I said to my brother, "who is this?" If I remember correctly he stated, "This is Dani, my girlfriend". I then reminded my brother what the physician's orders stated; "No visitors other than his children are allowed in dad's room. (I have these written physician orders in my possession as they were in the medical records. Danielle Pieper was not allowed to be there per physicians orders.) Danielle Pieper was present and I also told her that she was not family and was not allowed in the room and I told Danielle Pieper to leave.

My father was incapacitated, on life support fighting for his life in ICU (intensive care unit) and my father needed his rest.

At this time I told Steve that she had to leave. Then Dani (her real name is Danielle Pieper - deputy district attorney) started smiling in a smirking manner.

I didn't see anything to smile about as my father was fighting for his life and suffering on life support. Danielle continued to smirk. I don't remember the exact words I used but I do remember that I told her to stop smiling because there is nothing to smile about. I then told Danielle to leave as only family is allowed in my dad's room. She then looked at Steve, and then she looked at me and kept smiling. She was trying to instigate a confrontation with me as she continued to smirk as my dad was suffering. She did not leave although I had told her that she was not allowed in the room.

At this time my brother became very angry at me because I told her to leave. He then rushed from the other side of my father's bed where he was standing and came toward me. I started running toward the door as I knew my brother was going to beat me up as he has done in the past on several other occasions prior to this incident and after this incident. Police crime reports and 911 calls were taken on several other occasions that my brother has become violent with me and beat me up prior to this incident.

My brother continued to rush me as I was running from him toward the door. He managed to catch me near the door of my fathers ICU room. He pushed me to the ground then pushed my face into the ground as he was holding my arms behind my back. My brother is a lot bigger than me as he is 220 lbs and 6 feet tall. Danielle was watching as she admitted to in her statement she gave to the police.

Several nurses witnessed this violent incident with my brother as they rushed into the room and pulled my brother off me. Danielle and my brother then left the room. I then tried to leave the room also, but as I was walking out of the room, two security guards would not allow me to leave. As I was walking out, they walked very close behind me and one on each side of me. They were so close, that they were brushing up against me as they were walking. I then walked into the elevator and they got into the elevator with me. I did not want to be in the elevator by myself with

these two men, so I turned back around and ran back into my fathers ICU room. I then called 911 from my father's hospital room and told them what the security guards were doing to me. I waited for the police to arrive. The police told me "that they do not want you here." However some of the nurses were nice to me. The police said that I am not allowed on the hospital property. They would not tell me why except that security ordered me to be off. They said this in front of my father who was fighting for his life on life support, incapacitated and could not speak or open his eyes. Their presence was irritating my fathers medical condition.

I was then forced to walk out of my father's ICU room where officer Frederick told me that the hospital did not want me in the hospital outside the double doors of my father's Intensive Care Unit. He was being loud. We then walked out of the hospital and outside. Danielle and Steve were waiting in the hallway.  The officers told me to leave, but then would not let me leave.

The police officer went to talk to Danielle and Steve. They said that they want me arrested for battery domestic violence. The police officer told them he is not arresting me because there are no witnesses and no bruises and therefore there is no proof that a battery took place. There were two police officers at the scene.

At this time Steve grew angry at the police officer(s) and he told them that Danielle wanted to make a citizens arrest if they are not going to arrest me. They told Danielle and Steve, no they are not making a citizens arrest on me. Steve and Danielle then became more irritated with the officer(s) and demanded that they call their superior (Sergeant) to the scene. Danielle Pieper who is a deputy district attorney and my brother who is a 21 year veteran retired police officer manipulated the system and interfered with police proceedings when the police refused to arrest me, as the rookie cop felt inferior to Danielle Pieper as she was dictating to him the law and that he legally has to arrest me if she says so.

Shortly afterwards, another officer drove up. I believe he was the responding officers' Sergeant. Danielle and Steve then told the responding officer(s) to make the citizens arrest on me. The Sergeant knew my brother Steve as my brother was a police officer for 21 years and this is why he approved the citizen's arrest without merit; to accommodate and appease my brother.

Danielle interfered with police investigation by going above the responding officers' head in order to have me falsely arrested, imprisoned and jailed on a citizen's arrest without merit. She manipulated the system and abused her position as deputy district attorney.  Officer Frederick told me that he was only going to give me a citation, but Danielle Pieper pressured him to have me arrested.

Prior to my arrest, I told the officers that my father is very very deathly sick and he needs me to be with him and he expects to see me every day. The officers did not care and then they handcuffed my hands behind my back and put me in the police car. They kept handcuffs on me behind my back while I was waiting in the car as they were talking with my brother and Danielle outside the car for an additional 45 minutes. I could see them all standing and talking together next to the police car right outside the car window as if they were all long time friends; in the meantime I'm uncomfortable in the police car with my hands handcuffed behind my back and my father is inside the hospital struggling for his life on life support.

Having my hands handcuffed behind my back in this position for this long period of time was very uncomfortable. I thought they forgot about me at first because they had me in handcuffs for so long waiting in the car. The police officer then came back into the patrol car after 45 minutes and then

made a call to his wife/girlfriend and talked another 15 minutes as I was sitting in the back seat of the car with handcuffs on. I could hear him talking on his cell phone. He then finished his conversation and then transported me to the city jail where I was jailed for approximately 17 hours.

Danielle had me falsely arrested on a citizen's arrest for battery as she interfered with police proceedings. While I was falsely imprisoned in jail, the hospital took my father off life support because they knew I could not be there to stop them.

NRS 449.626 states that written consent must be given from the patient or his children prior to being taken off life support, and if no written consent is given, then it is murder. NRS 449.670 also states that the state of Nevada does not condone or authorize mercy killing.  Metro police officers helped the hospital by falsely locking me up in jail while they took my dad off life support without his written permission.

**After jail release on 3/21/08**

Approximately 17 hours later, I was then released from jail and I took a cab to the hospital where my truck was. I then drove home. I called the hospital as soon as I walked into the door to see if my Father was ok as I was not allowed back into the hospital.  The nurses would not give me any information on my father's health. They said they were instructed not to give me any medical information about my father and then they hung up the phone on me. I called back and every time I called and asked if my father was ok, they kept hanging up on me.

The next day and while I was not allowed in the hospital, and without my knowledge, my father was taken off life support without his written permission and without my written permission or without any family members written permission.  NRS 449.626 states that a doctor "must" have written permission from the patient or patients children prior to taking the patient off life support or else it is considered murder. No written permission was given. They took my father off life support while I was kicked out so I could not be there to stop them from taking my father of life support. My father was only on life support for one week after a botched up operation done by the doctors. They did not give him enough time to recover from the surgery. One week is not enough time to recover from surgery.

Prior to the initial operation on 2/29/08, no blood tests or any tests were done to determine whether my father needed the operation or not. He went to the hospital for tests "only" and not an operation. The hospital visit was unplanned and he didn't have insurance for that hospital. The ambulance driver took him there knowing he didn't have insurance. I called 911 after I could not revive my father when he took a 5 minute nap. And the ambulance took him even after I told him not to take him and he was ok and he didn't want to go. They took him anyway.

The doctors never did any tests at all. No blood tests were done, according to medical records which I obtained shortly after my fathers death.

The hospital never called me to let me know that my father passed away. I never knew that they took my father off life support until I obtained the medical records and read it for myself inside the medical records. I still would not have known that my dad was taken off life support if I would not have obtained the medical records and read it myself. The nurse admits to taking my dad off life support in her nurses notes. There is also one doctor that speaks of discussing taking my father off life support with the other doctors inside his notes.

In addition, Marc Digiacomo, one of the district attorneys in the violent crimes section at the District Attorney's office, stated to me, that it sounded like they murdered my dad because they didn't like his children (me and my two brothers). The hospital staff, nurses, doctors, etc... all ignored me and refused to update me on my dad's medical condition. The doctors said they are only allowed to speak to the patient about his own medical history and it's against the law to speak to family members about the patient's medical condition. I told the doctor, "but my dad is incapacitated and on life support and he can't speak for himself". The doctors didn't care, they ignored me.

I was listed on my father's hospital admittance as his only next of kin, and his only daughter and main contact person in case of emergency as my father and I lived together. I lived with my father over 40 years and I knew my fathers health better than anybody since we lived together. My father also signed papers during admission that he does not want a living will and he wants the hospital to do everything they possibly can to keep him alive. But the hospital ignored my father's written request to keep him alive, and they took him off life support against his wishes and without letting me know even though my father instructed them in his admittance records that I am the main contact person.

After obtaining the medical records, I read that the nurse put in her notes that the whole family was in the ICU room the day my father passed away. However, I was not there. The hospital made sure I was not there to stop them from taking my father off life support. My brothers and mother were also unaware my dad was taken off life support and they all were led to believe by hospital staff that my dad passed away on his own, but the medical records state that he was taken off life support.

Incidentally, this same nurse that stated in her nurses notes that the whole family was there, was the same nurse that witnessed my brother beat me up inside my father's hospital room, so she knew that I was suppose to be there and I was my father's daughter. She is also the same nurse that took my father off life support without written permission. Her name was Nurse Jane Theisen. She was not acting like a normal nurse that day. She acted as if something was on her mind, with several other nurses.

While I was in jail, Danielle also had me served with a TPO (temporary restraining order) through family court to keep me out of my father's hospital room. I was very distraught after my father passed away and I did not show up for the extended TPO hearing and so Danielle was able to get an extended TPO without me being present.

A few months later I filed an appeal through family court to have the TPO taken off me as it was put on me without merit. The judge took the TPO off me and granted my appeal.

Later I learned that Danielle tried to have me arrested once again on more charges. According to police reports, Danielle Pieper along with her team Chief V. Villegas at the district attorney's office called the police and requested that they have me arrested. I was not arrested.

Danielle had me arrested on a false misdemeanor charge and handcuffed and jailed while my father was hospitalized. Danielle wanted to hurt me more and have me arrested on a more severe felony charges.

**INTERROGATORY NO. 5:**

Please identify and describe, in detail, all facts which you contend confirm, evidence, support, or otherwise relate to your claim that your Fourth Amendment right to be free from excessive force

was violated.

**ANSWER TO INTERROGATORY NO. 5:**

Metro had no probable cause on March 21, 2008 to arrest me, handcuff me, and jail me. They forced me off private property, Mt. View hospital, where I was at my father's bedside giving him moral support and wishing and praying he gets better fast so he can come home. They didn't have a search warrant, or a magistrate order, or arrest warrant to arrest me, no probable cause, or anything. They just came in the hospital and arrested me, handcuffed me behind my back and took me away to jail in the police car.

The police officer didn't care what I had to say about anything. I told the police officer before he arrested me that my dad is in that hospital and he is expecting me to be there and he will be worried and sad if I am not there. The police officer, Frederick, didn't care; he just said he was arresting me. He took me to jail where I was patted down and put into jail clothes and forced and yelled at by the jail nurse to take a needle shot of something even after I told her I don't like needles and I don't want the shot. I think they said it was protein or something. They forced me to take the needle in my arm. It hurt.

Furthermore, NRS 171.136 states an arrest cannot be made between the hours of 7p.m. and 7a.m. The police officer arrested me at 8:30 p.m. He forced me out of my father's ICU room where I was at my father's bedside, and forced handcuffs on me and forced me into his police car and forced me to jail where I was forced out of my comfort zone as I was locked up with strangers. Prior to the 3/21/2008 arrest, I had never been arrested, handcuffed or jailed for any crime.

They hurt my dad the most by doing all this, because my dad was expecting me to be there with him and he needed me there so he could heal and come home. I was my dad's moral support. And when he opened his eyes, he was expecting me to be there. But the police wouldn't allow me to be with my dad. They didn't have probable cause to take me away from my dad's bedside. I was allowed to be there. I was supposed to be there. I'm my father's daughter.

**March 21, 2008,**

Before I was arrested or charged with anything, Officer Fredrick forced me to sit and wait on the bench in front of Mt. View hospital and did not allow me to leave. He then put handcuffs on me behind my back and placed me in the police car forcing me to sit and wait uncomfortably for another 45 minutes while he spoke to my brother and Danielle outside the police car, along with the other officers and Sgt. He then had me wait another 15 minutes while he spoke to his girlfriend/wife on his cell phone.

I was the one that called the police on 3/21/2010 for help because the hospital security guards Neal and Maurice were harassing me, so I called 911 for help from my fathers ICU room. The security guards were following me all over the hospital. They followed me into the elevator, and out of the elevator and into my father's ICU room and all over the hospital. They were harassing me the same as they have done in the past, but this time they were walking so close to me that they were touching me while banging their handcuffs in the palm of their hand, so I called the police for help.

However, instead of the police helping me, they handcuffed me, falsely arrested me and jailed me, and helped the hospital let my father die by having me falsely arrested and kicked out of my father's ICU room so I could not be there to stop the hospital from taking my dad off life support.

My father was on life support, fighting for his life and trying to get better when officer Frederick came into his ICU room and started talking real loud about forcing me to leave my father's bedside. Officer Frederick disrespected my father and aggravated my father's heart condition more. The two security guards Neal and Maurice were standing beside the Metro police officer while Frederick was talking to me. I was then forced to leave my father's ICU room by Metro officer Frederick. Officer Frederick then forced me to walk outside the hospital with him and forced me to sit on the bench and would not let me leave after he told me to leave.

They had a breathing tube down my dads throat and on life support and was on morphine; my dad's medical records prove this. Since my dad was incompacitated with a breathing tube down his throat and forced into a drug induced coma, he could not tell them to leave his daughter alone and that he wants me there. However, he put me down in his admittance records that he wants me there and I am his daughter, so there should not be no question about whether I'm allowed to be there or not. But they all ignored my dad's wishes to have me there. They even told me that if my dad wants me in there then he can talk to them and tell them, but my dad was unable to speak, he was in a drug induced coma. They were being cold blooded. The security guards did not have authorization to kick me out of the hospital. They authorized themselves to kick me out and then gave orders to Metro, and Metro listened to them.

The night before they kicked me out on the 21st, one of the nurses said my dad was getting better when I was there. She showed me his medical chart on the computer and said it's a miracle how well he is healing just from one night. Another nurse said to me that she went to medical school for a year, and she stated to me that it appears that my dad had lung problems, she didn't mention heart problems. She was trying to tell me something. Both these nurses said my dad will be coming home soon. The other nurses and the doctors didn't want my dad to come home, so they took him off life support so he couldn't get better and tell all that happened to him at the hospital and how the doctors didn't do any tests prior to operating. They just took him and did an operation that wasn't needed.

## March 18, 2008,

I was handcuffed and, harassed and roughed up by hospital security guards when they chased me into the street on Tenaya in front of the hospital. Security guards Maurice and Chris Simms handcuffed me behind my back after grabbing me in the middle of Tenaya when I was trying to run from them. Cars where driving by and honking, and I almost was hit by the cars driving by. I told security guard Maurice that the city owns the street and he isn't allowed to touch me because I'm not on Mt. View hospital property. Maurice responded by telling me that Mt. View hospital owns the sidewalk and the street and his boss gave him permission to bring me back on hospital property. Maurice then handcuffed me behind my back and called me names and kept hurting my arm as he kept pulling my arms behind my back up toward my head. My arms were bruised and hurt from this. I thought my arms were broken. I was crying and the more I cried the more he pulled my handcuffed arms up toward my head hurting me more.

I was sitting on the bench in front of the hospital on Tenaya, because the security guards were waiting for me to come back onto the hospital parking lot. I had to get my truck to drive home, but it was parked in the Mt. View hospital parking lot and the security guards had handcuffs and they were making threats of arrest at me if I came on the hospital grounds again, so I waited on the bench until they left, and when they left, then I would get in my car and drive home. However, they weren't allowing me to go home. They waited for me and kept harassing me knowing that my truck was there. They just kept calling me names while standing in the parking lot and watching me sit on the

park bench. Then the security guard Maurice started approaching me while I was sitting on the bench, and so I got up and started running across the street on Tenaya, and he grabbed me and put handcuffs on me in the middle of Tenaya and pulled me back onto Mt. View property. I thought I was safe from the security guards if I was off their property and sitting on the bench and on Tenaya, but I wasn't.

One metro cop arrived at Mt. View parking lot in a police car and saw me forced to the ground by security guards and sitting on the dirty cement parking lot of Mt. View hospital with handcuffs behind my back while the security guard Maurice was pulling my arms up behind my back. The metro officer, P# 9671 saw me with the handcuffs behind my back and didn't do anything about it. He allowed them to hurt me. I asked the police officer to please help me and my dad. I told him my dad is in that hospital room up there and they won't let me be with him. I pointed to the hospital room upstairs.

The police officer refused to help me, he yelled at me and told me that the hospital does not want me there. I told him, "but my dad is in the hospital and he expects me to be there with him". The police officer yelled at me and said that metro does not have jurisdiction over the hospital and Mt. View hospital is private property and even he isn't allowed on the premises, so he can't help and no police officer can.

If I remember correctly, I think he said he was going to arrest me for trespassing. I then told him to call my brothers because they are police officers and I'm allowed to be here with my dad and they will confirm it. I gave him my brothers' phone numbers. He said he got a hold of one, but didn't tell me which one. He said that my brother told him that me and my brother haven't spoken for years. I don't know what he was going to arrest me for, but I think he said he was going to arrest me for trespassing, but there was no documentation of me trespassed prior so he couldn't. He said I was lucky he didn't arrest me, but he didn't just say it, he was mean and said it loud and hate in his voice. Nothing I said mattered to him, he didn't want to listen to anything I said. According to him, the security guards were right and I was wrong for being there. I was there with my dad while he was recovering from open heart surgery. I didn't break any laws. I was allowed to be there. I was suppose to be there.

The security guards then took off the handcuffs. I told the officer that I think my arm is broken because they were jerking it hard. The officer yelled at me and said, "YOUR ARM'S NOT BROKEN, IF IT WERE BROKEN THEN YOU WOULD KNOW IT!" He then raised his voice and said, 'YOU'RE LUCKY I DON'T ARREST YOU FOR TRESPASSING, THEY DON'T WANT YOU HERE!" He then told me to leave, so I left.  I was never read any trespass statute at this time.  The police officer refused to help me when I asked him for help. He saw me in handcuffs and illegally detained and seized and he didn't help me, instead he tried to intimidate me by yelling at me and threatening me with an arrest. Security guards didn't have any probable cause to put handcuffs on me. Metro refused to help me, and he watched instead of helping.

It is documented and proven by three verifiable sources that Mt. View did place me in handcuffs behind my back and illegally detain me while Metro watched after I asked him for help.

1.  Mt. View hospital's own security log files admit to having me placed in handcuffs.

2.  The 911 call to police which is recorded by the police department is discussing me being in handcuffs, and

3.   Metro's transcribed police log files documented on 3/17/2008 provide confirmation of witnessing me in handcuffs, and the responding officer observing me in handcuffs and not helping me or my dad.

Within hours, that same day, while I was out of the hospital and not there, my dad mysteriously went into cardiac arrest. The hospital staff did something to my dad while I wasn't there to make him have a heart attack. Medical records show that they had him on too much morphine and they also ordered succlycholine, that's a drug that nurses use to force patients into cardiac arrest that they want dead. I researched all my dad's drugs listed in his medical records after I received a copy of them. My brothers told them not to give my dad morphine because he gets better when he's not on it. The doctors and nurses ignored us and kept giving him morphine. One nurse told me that she can't see the medications the other nurse have given or the other nurses notes, and they can only read their own computer screen, so it is easy for them to give the patient a double dose when not needed.

Prior to March 17, 2008, he was not on life support. He was not able to speak full sentences from the surgery but he was able to nod his head yes and no and move his hands. He told me he wanted to come home with two words. He was getting better, and the doctors didn't want him to get better, specifically Dr. Rebecca Sinai, D.O. She made a comment saying something like, "He doesn't want to give in, he keeps living." She was implying that she was expecting him to not recover. The surgeon, Dr. Timothy Hamilton, also told us right before the surgery that he was going to "suck out the pneumonia" from my dad. My dad was not supposed to go into surgery because he had pneumonia that he obtained from being in the hospital, and you can't suck out pneumonia. They told us that my dad has a 95% chance of surviving the operation; they knew that 81 year old people don't make it out of open heart surgery, and they did the surgery anyway. My dad's medical records show that my dad was not a good candidate for open heart surgery and he had a zero chance of survival if he went into surgery. The cardiologist Dr. Michael Codina said in the recorded meeting that my dad will be better and stronger after the surgery. He gave us false hope. My dad was bleeding out of his mouth right before the open heart surgery; he was not strong enough to go into surgery.

None of the doctors would speak to me about my dad. Dr. Rebecca Sinai D.O, the doctor assigned to my dad while in the hospital avoided me and did not speak to me. She said in a recorded meeting that she was not his doctor, however, she was the one that ordered the pacemaker and approved the surgeries and is listed in his medical charts as his primary physician. She also was no where to be found when the nurse took my dad off life support. No doctor was around and there is no doctors orders inside the notes. Nurse Jane Theisen said in her nurse notes that she took the patient off the machine then called the doctor and told him what she just did, then she clocked out to go home.

My dad wanted to come home. They wouldn't allow him to come home or leave the hospital. Mt. View hospital was not equipped for an open heart surgery patient. Dr. Timothy Hamilton said that my dad was the sickest patient Mt View has ever had. They wouldn't allow my dad to go home.

**Another incident on March 2, 2008,**

At approximately 11:15 AM, two uniformed police officers exited ICU floor elevator with my brothers and entered the waiting area with my two brothers Lewis and Steve Zaic, and my mother, Marilyn Zaic. My brothers are both Metro detectives for nearly 25 years each. Steve retired approximately 2 years prior to that day, and Lewis was still working as a detective, but he was off

work that day. The uniformed police officers were standing there trying to intimidate me as they were speaking to the security guards. The hospital security guards said to me in front of the police officers that the cops were there to arrest me.

About 15 minutes later, one of the officers walked up to me and said to me, "we're only here to keep the peace". I feel that they sensed something was not right and they didn't want me to think they were going to arrest me like the security guards said they were going to do. They were told by my brothers that they were there to keep the peace, but really my brother Lewis ordered them there to try and intimidate me.

From that day forward, after the uniformed police left, the staff became hostile with all of my family. They gave me the impression that they were cop haters. They took out their anger on my dad because he is the father of two cops.

Mark Digiacomo, district attorney, said to me on the phone that it sounds like they (doctors, nurses) didn't like my dads kids. I told this to the metro homicide Sargeant Scott via telephone. However, he refused to help me. Sgt. Scott even came out and said before investigating and without investigating the death.

Metro Sgt. Scott said not to call back the homicide department again and if I call again then he is going to have me arrested. I only called I think two or three times, and he was the one that asked me to call back with more information or he was busy or something, not sure. If I remember correctly, Sgt. Scott told me to file a complaint with the medical examiners. I did file the complaint with both the medical examiners, and D.O. doctor of osteopath examiners and nursing board and also the medical review board, and they all refused the case. The death was not investigated even though NRS 449.670 states the State of Nevada does not condone, authorize or approve mercy-killing, assisted suicide or euthanasia.

Sgt. Scott stated since my brothers are detectives then they should investigate our father's death, and basically don't bother him. I told my brother Steve what Sgt. Scott said and how he said Steve should investigate the death for the homicide Sgt. Scott, and then bring the investigation paperwork to the Sgt. and he will open the case. Steve responded by telling me that he's not a cop anymore and he also was never a homicide detective so he can't investigate the death and he doesn't know how to investigate a homicide. I also spoke to a lieutenant in homicide concerning my fathers death. The lieutenant said opposite what Sgt. Scott said. Lieutenant said if I have anymore information, then to call him back. I think his name was Lt. Shoemaker.

**INTERROGATORY NO. 6:**

Please identify and describe, in detail, all facts which you contend confirm, evidence, support, or otherwise relate to your claim that your Fourth And Fourteenth Amendment rights to be free and unreasonable search and seizure was violated.

**ANSWER TO INTERROGATORY NO. 6:**

I was deprived of liberty, property, life and due process when they handcuffed me, and locked me in a jail cell. The arresting officer did not allow me due process prior to falsely arresting me. He just arrested me.

He hurt my dad because I couldn't be there with my dad while he was in that hospital room recovering from open heart surgery. Metro left my dad wondering what was going on and why the police came into his ICU room and took his daughter away. My dad was incapacitated and sleeping in a drug induced coma while on life support at the time, but research has proven that patients heal quicker when they are surrounded by their loved ones.

They wouldn't allow my dad to grow old naturally. He was in good health before he entered that hospital. There was nothing wrong with him. He didn't need surgery. We jogged every day together and we ate healthy food. They put him in arm restraints and forced him to stay in the hospital against his will. Then kicked me out of the hospital, killed my dad by taking him off life support. They kicked me out so I couldn't be there to stop them.

I also asked for my father's medical records while he was still alive and in the hospital. I wanted to read what they were doing with my dad since they refused to speak to me and tell me. They refused to give the records to me stating that they can only give the medical records to the patient. I told them, "but my dad is on life support and he is unable to speak for himself, and I am his daughter." They refused to give my dad's medical records to me.

I filed complaints with the Nevada Medical examiners, Nevada Doctor of Osteopath board, Nevada nurses board, and Nevada medical board. They all closed my complaint.

Metro and the security guards would not allow me to be by my father's bedside so he could see me there and heal and come home. They took a part of my life away from me when they took my dad away.

**INTERROGATORY NO. 7:**

Please identify and describe, in detail, all facts which you contend confirm, evidence, support, or otherwise relate to your claim that your Equal Protection Rights were violated.

**ANSWER TO INTERROGATORY NO. 7:**

See Interrogatory NO. 5, and Interrogatory NO. 6.  The police are supposed to protect me from harm and not hurt me. Instead of protecting me, they hurt both me and my dad when they handcuffed me, falsely arrested me, and put me in jail while taking me away from my dad's bedside while I was with him during his recovery from open heart surgery in the Intensive Care Unit in Mt. View hospital.

**INTERROGATORY NO. 8:**

Please identify and describe, in detail, all facts which you contend confirm, evidence, support, or otherwise relate to your claim that you suffered a loss of physical liberty.

**ANSWER TO INTERROGATORY NO. 8:**

The police handcuffed me with my hands behind my back.  The police imprisoned me on a false arrest and put me in jail while my father was suffering and fighting for his life on life support in Mt. View hospital. I told the police my dad needs me and he is expecting me to be there and if I'm not there, then he'll be sad and wonder where I am, he'll think I don't love him. He'll worry and wonder about his surroundings and his family and I didn't want him to worry or think about anything but getting better, I just wanted him to get better. I didn't do anything wrong. I didn't break

any laws. They arrested me on a false arrest while my father was in the hospital trying to heal from open heart surgery. They wouldn't allow me by my fathers bedside so he could know that his daughter loved him.

The police falsely arrested me and imprisoned me, thus, allowing the doctors to take my father off life support while I was imprisoned.

**INTERROGATORY NO. 9:**

Please identify and describe, in detail, all facts which you contend confirm, evidence, support, or otherwise relate to your claim that you suffered the following injury:  physical pain and suffering and emotional trauma and suffering, as alleged in Paragraph 34(c) of your Second Amended Complaint.

**ANSWER TO INTERROGATORY NO. 9:**

I suffered physical pain and emotional distress when they put the handcuffs behind my back causing me discomfort as they forced me to sit in the back of the police car in the uncomfortable position. I also experience emotional pain every day of my life because I remember that I was falsely arrested, detained, handcuffed and jailed against my will when my dad was fighting for his life in a hospital and he was taken off life support by the hospital while I was forbidden to be by my dad's side to make sure he is safe from harm.  If the police didn't arrest me and they helped me instead, then my dad would still be alive.

**INTERROGATORY NO. 10:**

Please identify and describe, in detail, all facts which you contend confirm, evidence, support or otherwise relate to your allegation that Las Vegas Metropolitan Police Department has a defacto policy to "summarily punish persons in an unlawful manner without corroborating information and without rightful authority of law and by the use of excessive force," as alleged in Paragraph 36 of your Second Amended Complaint.

**ANSWER TO INTERROGATORY NO. 10:**

On March 21, 2008, Metro officers B. Eager, P#6189, and T. Frederick, P#9793 maliciously arrested me, detained me and handcuffed me without merit and without probable cause.  They never took pictures of the alleged victim, Deputy Danielle Pieper, simply because there was no crime that took place.  The two officers were taking orders from Deputy Danielle Pieper while she abused her authority of law, abused the process, and told them to arrest me while dictating the law to them. The police conspired with deputy district attorney Danielle Pieper and the hospital security guards to arrest me. I was treated differently because I am not law enforcement and I am private citizen. My word meant nothing to them. They didn't care.  I was summarily treated by the police.

**INTERROGATORY NO. 11:**

Please identify and describe, in detail, all facts which you contend confirm, evidence,

support, or otherwise relate to your claim that you were falsely arrested and imprisoned, including

how long LVMPD Officers detained you.

**ANSWER TO INTERROGATORY NO. 11:**

I was never convicted for the battery charge of NRS 200.481. I was found "not guilty and innocent" by the Judge at trial. I was falsely imprisoned in jail for approximately 17 hours, and I was illegally detained by LVMPD officers Eager and Frederick for approximately two hours from 8:30 pm to 10:30 pm, before Metro officer Frederick drove me to jail in handcuffs in the back of the police car. I was booked into jail at 10:54 pm. and stayed 17 hours.

When I arrived at the jail the guards put chains on me, patted me down, put me in jail clothes, and then locked me in a tiny jail cell. I was already in shock and traumatized from seeing my father helpless in the hospital bed, and the police had to make it worse for me by arresting and handcuffing me. I don't have a criminal history. I am born and raised in Las Vegas, my brothers were metro detectives for nearly 25 years each, therefore, there was no reason to place handcuffs on me. I was not a threat to the officers. I was both mentally and physically weak from seeing my dad and me not eating since my dad entered the hospital. One nurse even commented on my rapid weight loss, and another nurse at the blood bank refused my blood because she said I was too underweight. I went to the blood bank to give my dad my blood, but they wouldn't take it. Me and my brother Steve wanted our dad to have our blood instead of a strangers blood in case they needed to give blood to my dad, but they wouldn't take it, they also said it was too late and the blood had to be given in advance. The doctors refused to tell me anything. I had to think of everything on my own. They treated us horrible, and Metro treated me just awful. Metro treated my dad awful too because they wouldn't allow me to be with my dad at a time when he needed me the most. Metro helped the hospital allow the death of my dad by taking my dad off life support on 3/21/2008 and on 3/17/2008 kicking me out, causing my dad to go into cardiac arrest after they did something to him while I was not there.

While I was in jail, my dad was locked in the hospital with arm restraints on him and on life support fighting for his life, while metro and the hospital refused to allow me to be with him and refused to help my dad. I asked Metro to help me and my dad, but they refused my request for help and arrested me instead, allowing the hospital to take my dad off life support.

**INTERROGATORY NO. 12:**

Please identify and describe, in detail, all facts which you contend confirm, evidence, support, or otherwise relate to your claim that Defendant LVMPD negligently hired, trained, and supervised its officers.

**ANSWER TO INTERROGATORY NO. 12:**

Officers Eager and Frederick falsely arrested me without merit and without probable cause. They never investigated the alleged crime prior to arresting me, and they did not know the law that states they are not allowed to arrest somebody on misdemeanor charges after 7:00 pm. If they did know the law, then they ignored the law and made their own law and arrested me regardless of what the law states. They simply arrested me without probable cause and without feelings concerning my father's health and why I was at the hospital in the first place. The metro cops were heartless. Officer Frederick came into my dad's ICU room and started talking as loud as he could about me

leaving, in the dark while my dad was there. The two hospital security guards were next to him. My dad needed his rest because he was recovering from open heart surgery. Metro disrespected my dads health.

They never requested a written statement from me and they never took pictures of Deputy District attorney Danielle Pieper, simply because no crime was committed and it was a made up scheme to have me falsely arrested.

Danielle abused the process by manipulating the system while having me falsely imprisoned, detained, charged, and arrested. I had to attend the criminal battery trial against me as I was humiliated with embarrassment in a court room while being accused of a made up crime by Deputy District Attorney Danielle Pieper. Deputy District Attorney Danielle Pieper used to be a Deputy City attorney prior to being a District Attorney, and therefore, she knew everybody in the courthouse. She pushed this case through so I would be charged. Metro pushed the case through and sent it to the City attorney for prosecution as they conspired with former City Attorney, now District Attorney Danielle Pieper.

If the arresting officers were properly trained officers, then they would have been able to make their own decision and not be manipulated by Danielle Pieper into arresting me. They would not have conspired with Danielle to arrest me, causing my dad's death. Proper training and supervision would have prevented this treatment.

**INTERROGATORY NO.13:**

Please identify and describe, in detail, all facts which you contend confirm, evidence, support, or otherwise relate to your claim that you suffered emotional distress.

**ANSWER TO INTERROGATORY NO. 13:**

This false arrest, false imprisonment and all other claims changed my outlook on life and the law. Because of this incident, I don't trust police officers anymore. I lived and experienced it myself, and I see that there are dishonest police officers and dishonest attorney's within the judicial system. These are people I used to trust and look up to for guidance. The police are supposed to protect citizens and not hurt them.

I was raised in a law enforcement family, my two older brothers were police officers/ detectives with Las Vegas Metro for nearly 25 years each, and therefore, I naturally grew up respecting police and law enforcement officers. Prior to the hospital incident and my father's death, I use to feel safe around police officers.

However, I don't think this way anymore and I don't feel safe around police officers knowing they disobey the law and make their own laws and knowing they could just put handcuffs on anybody they want without probable cause.

I asked the police for help with my father and instead of helping me and my dad, they falsely imprisoned and arrested me while abusing the process under color of law and colluding and conspiring with one of the Deputy District Attorney's, Danielle Pieper.

Danielle Pieper was my brother's live-in girlfriend at the time. She was living in his house. My brother is a retired metro detective of nearly 25 years and she's a deputy district attorney. Pieper

manipulated the system as she was ordering the arresting officers to arrest me. She was dictating the law to them as she was bragging about being one of the district attorneys. The police told Danielle that they were not going to arrest me and they were going to issue me a citation instead, but Danielle demanded that I be arrested on a citizens arrest and a citation is not good enough, so they arrested me. They listened to Danielle dictate the law to them. She bragged about how she is an attorney and she knows the law, so the cops listened to her.

Prior to this false arrest incident, I've never been handcuffed or in jail in my entire life. This false arrest is going to stay in my memory for the rest of my life. It's not something I can forget. They forcibly took me away from my dad during the last days of his life. We lived together for 40 years. He was my best friend.

**INTERROGATORY NO. 14:**

Please identify and describe, in detail, all facts which you contend confirm, evidence, support, or otherwise relate to your claim that Defendant LVMPD and the LVMPD Police Officers were negligent.

**ANSWER TO INTERROGATORY NO. 14:**

March 21, 2008, Metro police officers arrested me without probable cause. The evidence shows Metro placed me in handcuffs, and illegally detained me in jail for 17 hours. In addition, the humiliating criminal trial that took place in Municipal court is evidence that I was falsely arrested.

It wasn't good enough for Metro to falsely arrest me while colluding with District Attorney Danielle Pieper; they also maliciously sent the case to City Attorney for prosecution. I was found "not guilty" at trial.

Metro simply arrested me without probable cause. They didn't care about why I was at the hospital. They didn't care about my dad dying as they were putting handcuffs on me. They refused to listen to me. I asked them for help, and they refused to help me. If the officers would have helped me on 3/21/2008, then my dad would still be alive today and living a healthy happy life. Metro had a duty to protect me from the abuse of Danielle Pieper and Mountain View Hospital and to supervise and train the officers.

**INTERROGATORY NO. 15:**

Please describe, in narrative form, the basis for your conspiracy claim against LVMPD and LVMPD Police Officers.

**ANSWER TO INTERROGATORY NO. 15:**

Metro conspired along with Deputy district attorney Danielle Pieper to maliciously and falsely arrest me just to prove she can and she has the authority to do so simply because she is one of the district attorneys. This is a citizens arrest and the police went along with Danielle's false battery allegation and falsely arrested me. Metro and the Mt. View hospital had no warrant, or magistrate order, or probable cause for the arrest and they had no legal cause or excuse to seize and arrest me.

It's very disturbing that the people involved in the false arrest were people we look up to and

relied on to protect us from harm. As a community, we hold our police force and prosecuting attorneys to a higher standard. I grew up thinking they are here to keep the bad people from harming us. But in my situation, the police and the prosecutors are the bad ones that conspired to have me arrested and attend a criminal trial to defend myself. The false arrest was made by Las Vegas Metro police officers, a sergeant that approved the arrest and a Deputy district attorney; people that I used to look up to, and I don't anymore.

The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other as a means to help the hospital take my dad off life support by kicking me out of the hospital so I could not be there to stop them from taking my dad off life support.

As a result of their conspiracy, I was falsely arrested, handcuffed, incarcerated and charged with battery and forced to attend a criminal trial in my defense. I sustained severe emotional, psychological and physical injuries, mental pain and suffering and emotional distress that I will live with for the rest of my life. The arrest was unreasonable and without justification and it constitutes battery by placing me under arrest and unlawfully handcuffing me against my will when Metro or the security guards did not observe me engage in any criminal conduct. They had no probable cause to arrest me. But they did it anyway.

These horrible events should have never taken place if the police officers were properly trained, and they will stay in my memory for the rest of my life. It's a nightmare. My dad is gone forever. The police wouldn't allow me to be with my dad.

They conspired to have me arrested so I could not be there when they took him off life support. March 17 or 18th of 2008, the hospital also kicked me out of the hospital just when my dad was almost healed, then a few hours within the security guards forcing me out of the hospital on 3/17/2008, and handcuffing me and Metro witnessing this incident, my dad mysteriously went into cardiac arrest.

They did something to my dad to bring on a cardiac arrest. He was fine when I was there. The mysterious cardiac arrest happened within hours of them kicking me out and medical records and nurses notes reveal this.

My brothers and mom asked the nurses to allow me to be with my dad. The hospital staff allowed me into the hospital to be with my dad. I was allowed back in the next day and up until March 21, 2008, when they kicked me out again. The nurses encouraged me to be with my dad, but several nurses specifically did not want me with my dad while they were his nurse. My dad went into cardiac arrest, and bad things happened to my dad only when these specific nurses where there and did not allow me to be there. They yelled at me and told me to leave the room in front of my dad.

Then on 3/21/2008, security guards started harassing me and Metro came and falsely arrested me and kicked me out once again. Then Nurse Jane Theisen took my dad off life support while I could not be there to stop her because they kicked me out and had me arrested. Nurse Jane Theisen lied in her nurses notes and said the whole family was present with my dad, however, I was not there because I was forbidden from being there and I was just arrested, and nurse Jane Theisen was the nurse the night of the arrest, so she knew I was my father's daughter and I was not there. She simply lied in her nurses notes. If I were there and allowed in the hospital to watch over my dad, then my dad would still be alive.

**INTERROGATORY NO. 16:**

Identify all physical, mental or emotional injuries you contend you suffered as a result of the

incident on March 21, 2008, including a description of the injuries; the type, severity and duration of symptoms, whether any, and if so, which injuries were an aggravation of a pre-existing condition or injury; and whether any, and if so which, of the injuries are permanent.

**ANSWER TO INTERROGATORY NO. 16:**

N/A

**INTERROGATORY NO. 17:**

If you received medical care or treatment from any doctor, or anyone as a result of any injuries you claim to have received as a result of this incident, please supply answers to the following:

a)    The date you first received medical care and treatment, and the name and address of the doctor, or other practitioner who treated you and where;

b)    The name and address of each doctor, or other practitioner, indicating his/her specialty, if any, whom you have seen for medical care or treatment as a result of the injuries received in the alleged incident; and

c)    The dates and description of the care and treatment provided by each person.

**ANSWER TO INTERROGATORY NO. 17:**

N/A

**INTERROGATORY NO. 18:**

Please list any non-medical damages you allege to have suffered as a result of this incident.

**ANSWER TO INTERROGATORY NO. 18:**

I was falsely arrested, handcuffed, incarcerated and charged with battery. I sustained severe emotional, psychological and physical injuries, mental pain and suffering and emotional distress that I will remember forever. The arrest was unreasonable and without justification and it constitutes battery by placing me under arrest and unlawfully handcuffing me against my will when Metro or the security guards did not observe me engaged in any criminal conduct.

These horrible events should have never taken place if the police officers were properly trained, and they will stay in my memory for the rest of my life. My dad would still be alive if the police officers helped us when I asked them to. They arrested me instead of helping. The police officers helped the hospital end the life of my dad because they should of helped me and listened to me when I told them my dad was in the hospital. Instead, the police handcuffed me, and arrested me, and on 3/17/2008, the police officer told me that he does not have jurisdiction over Mt. View hospital and no police officer does and he is not allowed inside the hospital to help my dad. A few hours of him saying this, my dad mysteriously went into cardiac arrest. They did something to him while I wasn't there to stop them and I will remember this for the rest of my life.  If the police would have helped me and my dad when I asked them to, then my dad would still be alive.

**INTERROGATORY NO. 19:**

Please state whether you are making a lost wages claim and, if so, how much.

**ANSWER TO INTERROGATORY NO. 19:**

Plaintiff is not claiming a wage loss.

**INTERROGATORY NO. 20:**

If in answering the Requests for Admissions served contemporaneously herewith you denied any Request for Admission, as to each, state any and all facts which form the basis upon which you deny the same and identify any and all documentation in your possession or control which support the denial.

**ANSWER TO INTERROGATORY NO. 20:**

See the answers above, describing the incidents and the responses to Request for Admissions.

**INTERROGATORY NO. 21:**

Describe in narrative form all facts relating to you being "previously harassed and handcuffed," on a prior occasion at Mountain View Hospital, as stated in paragraph 20 of your Complaint.

**ANSWER TO INTERROGATORY NO. 21:**

See response to Interrogatory No. 5.

DATED this 10th day of January, 2011.

POTTER LAW OFFICES

By_____
CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
JOHN C. FUNK, ESQ.
Nevada Bar No. 9255
1125 Shadow Lane
Las Vegas, Nevada  89102
*Attorneys for Plaintiff*

**VERIFICATION**

I, JOYCE ZAIC, declare as follows:

I am a party to the within action.  I have read the following **PLAINTIFF'S RESPONSES TO DEFENDANT LAS VEGAS METROPOLITAN POLICE DEPARTMENT, B. EAGER AND T. FREDERICK'S INTERROGATORIES** and I know the contents thereof.  The same is true of my knowledge, except as to those matters which are herein stated upon my information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed this 8 day of January, 2011.

_____
JOYCE ZAIC

Subscribed and Sworn to before
me this 8th day of January, 2011.

_____
NOTARY PUBLIC


MICHELLE KARONY
Notary Public State of Nevada
No. 04-87266-1
My appt. exp. Feb. 27, 2012

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that pursuant to the Amended EDCR 7.26 and to NRCP5(b) on the 10th of January, 2011, I did serve at Las Vegas, Nevada a true and correct copy of **PLAINTIFF'S RESPONSES TO DEFENDANT LAS VEGAS METROPOLITAN POLICE DEPARTMENT, B. EAGER AND T. FREDERICK'S INTERROGATORIES,** on all parties to this action by:

    ☒  Facsimile
    ☒  U.S. Mail
    ☐  Hand Delivery

Addressed as follows:

Craig R. Anderson, Esq.
MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
Fax No. (702) 856-8912
*Attorneys for Defendants*
*LVMPD, B. Eager & T. Frederick*

Richard E. Tanasi, Esq.
CHRISTIANSEN LAW OFFICES
9910 West Cheyenne Avenue, Suite 110
Las Vegas, NV 89129
Fax No. (702) 658-3848
*Attorneys for Defendant*
*Danielle K. Pieper*

Michael E. Prangle, Esq.
Casey W. Tyler, Esq.
HALL PRANGLE & SCHOONVELD
777 North Rainbow Blvd., Ste. 225
Las Vegas, Nevada 89107
Fax No. (702) 384-6025
*Attorneys for Defendant*
*Mountain View Hospital*

Raymond R. Gates, Esq.
LAURIA TOKUNAGA GATES & LINN
1755 Creekside Oaks Drive, Suite 240
Sacramento, CA 95833
Fax No. (916) 492-2500
*Attorneys for Defendant*
*Danielle K. Pieper*



An Employee of POTTER LAW OFFICES

x  x  x  C o m m u n i c a t i o n   R e s u l t   R e p o r t   ( J a n. 10.  2 0 1 1   6:15PM )  x  x  x

1)
2)

Date/Time: Jan. 10.  2011  5:38PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 1017 | Memory TX | 8563912 | P.  21 | OK | |
| | | 6583848 | | OK | |
| | | 3846025 | | OK | |
| | | 19164922500 | | OK | |

--------------------------------------------------------------------

Reason for error
E. 1) Hang up or line fail          E. 2) Busy
E. 3) No answer                     E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size

RSPN
CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
JOHN C. FUNK, ESQ.
Nevada Bar No. 9255
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

STATE OF NEVADA

✦✦✦

JOYCE ZAIC,                                    CASE NO.:  2:10-cv-01814-PMP-LRL

            Plaintiff,

    v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT a political subdivision of
the STATE OF NEVADA; DANIELLE
PIEPER, individually; B. EAGER, P#6189,
individually and in his official capacity as a
police officer; T. FREDERICK, P#9793,
individually and in his official capacity as a
police officer; SUNRISE
MOUNTAINVIEW HOSPITAL, INC.;
NEAL, security guard for MOUNTAIN
VIEW HOSPITAL; CHRISTOPHER
SIMMS, security guard for MOUNTAIN
VIEW HOSPITAL; JOHN DOES I through
X, and ROE CORPORATIONS I through X,
inclusive;

            Defendants.

**PLAINTIFF'S RESPONSES TO DEFENDANT LAS VEGAS METROPOLITAN**

**POLICE DEPARTMENT, B. EAGER AND T. FREDERICK'S INTERROGATORIES**

TO:    Defendant, LAS VEGAS METROPOLITAN POLICE DEPARTMENT, B. EAGER and
       T. FREDERICK;

TO:    CRAIG R. ANDERSON, ESQ. of MARQUIS & AURBACH, their attorneys.

       COMES NOW, the Plaintiff, JOYCE ZAIC, by and through her counsel, CAL J. POTTER,
III, ESQ. and JOHN C. FUNK, ESQ., of POTTER LAW OFFICES, and produces Plaintiff's