MARQUIS AURBACH COFFING
CRAIG R. ANDERSON, ESQ.
Nevada Bar No. 6882
JOSHUA L. BENSON, ESQ.
Nevada Bar No. 10514
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
jbenson@maclaw.com
  Attorneys for Defendants LVMPD,
  Eagar & Frederick

## UNITED STATES DISTRICT COURT
## STATE OF NEVADA

| | |
|---|---|
| JOYCE ZAIC,<br><br>                Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the STATE OF NEVADA; DANIELLE PIEPER, individually; B. EAGAR, P#6189, individually and in his official capacity as a police officer; T. FREDERICK, P#9793, individually and in his official capacity as a police officer; SUNRISE MOUNTAIN VIEW HOSPITAL, INC.; NEAL, a security guard for MOUNTAIN VIEW HOSPITAL; CHRISTOPHER SIMMS, security guard for MOUNTAIN VIEW HOSPITAL; JOHN DOES I through X and ROE INSTITUTIONS I through X, inclusive,<br><br>                Defendants. | Case No:    2:10-cv-01814-PMP-GWF |

### DEFENDANTS LAS VEGAS METROPOLITAN POLICE DEPARTMENT, OFFICER EAGAR AND OFFICER FREDERICK'S MOTION FOR SUMMARY JUDGMENT

Defendants Las Vegas Metropolitan Police Department, Officer Eagar and Officer Frederick (collectively "LVMPD Defendants"), by and through their counsel of record, Marquis Aurbach Coffing, hereby file their Motion for Summary Judgment on Plaintiff's only cause of action against the LVMPD Defendants: First Cause of Action—Violation of Civil Rights. This Motion is based on the following Points and Authorities, the pleadings and papers on file herein, and any oral argument by counsel permitted at the hearing on this matter.

M&A:05166-451 1436795_1.DOC

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION.

On March 21, 2008, Las Vegas Metropolitan Police Department ("LVMPD") Officers responded to a call at Mountain View Hospital regarding an individual who was unlawfully on the premises. Indeed, Plaintiff Joyce Zaic had been trespassed four days earlier and was being highly disruptive. Upon arrival, LVMPD Officers interviewed security personnel, eyewitnesses and an alleged battery victim. As a result of the investigation, LVMPD officers arrested Zaic for a battery. Following the arrest, Zaic filed this lawsuit. The only remaining claim is Zaic's allegations that the LVMPD officers violated Zaic's Fourth Amendment Rights by effectuating an unlawful seizure, using excessive force and that LVMPD has unconstitutional policies. Discovery is now closed. The undisputed facts demonstrate that the LVMPD officers had probable cause to arrest Zaic for battery and trespass and did nothing more than place handcuffs on Zaic, which caused no pain and resulted in no injuries. Thus, LVMPD Defendants respectfully request the Court dismiss Zaic's First Cause of Action against Officer Frederick, Officer Eagar and LVMPD.

## II. STATEMENT OF UNDISPUTED FACTS.

### A. ZAIC'S COMPLAINT.

Zaic alleges that on March 21, 2008, LVMPD Defendants subjected Zaic to (1) unlawful seizure, and (2) use of excessive force. Further, Zaic alleges a Monell claim against LVMPD claiming that the "actions of the defendant officers were taken pursuant to a de facto policy of defendant LVMPD which is implemented by police officers."[1] After nearly 12 months of discovery, the undisputed material facts evidence that LVMPD acted with probable cause and effectuated the arrest with reasonable force.[2]

---

[1] Third Amended Complaint, at Docket #31 at ¶ 37.

[2] Declaration of Officer Frederick, attached as **Exhibit A**; Declaration of Officer Eagar, attached as **Exhibit B**.

M&A:05166-451 1436795_1.DOC

**B.   ZAIC HAD NUMEROUS PROBLEMS WITH MOUNTAIN VIEW HOSPITAL RESULTING IN HER BEING TRESPASSED ON MARCH 17, 2008.**

Zaic regularly visited Mountain View from the day her father was admitted on February 29, 2008, until her arrest on March 21, 2008.[3] During that time, LVMPD learned Zaic caused numerous problems resulting in her formal trespass on March 17, 2008, and her arrest after she unlawfully entered the property and battered another visitor on March 21, 2008.[4] Zaic's first confrontation occurred only two days after her father was admitted. On March 2, 2008, the doctors held a family meeting to explain Zaic's father's medical condition to the family due to complications from the pacemaker.[5] In anticipation of the meeting, LVMPD officers were asked to attend to keep the peace.[6] Despite the presence of officers and Mountain View security, Zaic got into an argument and the security guards indicated they were going to have Zaic arrested.[7]

On March 5, 2008, Zaic complained to hospital staff regarding her father's conditions and demanded another nurse be assigned to him.[8] Things escalated to the point that security told Zaic if she came back to Mountain View, they would have her arrested.[9]

On March 9, 2008, the day of her father's operation, Mountain View again threatened to remove Zaic from the Mountain View due to her actions. Zaic stated that "[Mountain View] threatened to kick me out on March 9th...."[10] Zaic recalled that she was refusing to leave Mountain View and the staff instructed her that the hospital has a history "with her and that she

---

[3] Plaintiff's Responses to Defendant Las Vegas Metropolitan Police Departments, B. Eagar and T. Frederick's Interrogatories at Interrogatory No. 1, attached as **Exhibit C**.

[4] Id.

[5] Deposition of Joyce Zaic at 56:25-57:25, attached as **Exhibit D**.

[6] Id. at 59:1-7.

[7] Id. at 58:9-24.

[8] See id. at 123:10-16.

[9] Id. at 124:1-4.

[10] Id. at 64:1.

M&A:05166-451 1436795_1.DOC

will be asked to leave the hospital if she does not follow instructions from hospital staff."[11]

On March 11, 2008, Zaic was kicked out of Mountain View.[12] Zaic claims she did not know why she was asked to leave Mountain View.[13] In fact, Zaic acknowledged that she "was asked to leave Mountain View several times. [She doesn't] recall the dates. [She] recall[s] some of the dates but not all of them."[14]

Prior to March 17, 2008, the date of the formal trespass, Mountain View tried to work with Zaic and imposed time restriction on when Zaic would be allowed on Mountain View property. On March 15, 2008, Zaic came to visit her dad and was told she was not allowed because she was only allowed on Mountain View property at certain times.[15] Zaic was told that she was only allowed at Mountain View for "five minutes or something. 10:00 and 2:00 or something, like what it says."[16]

Finally, on March 17, 2008, Mountain View had to formally trespass Zaic from the hospital. Zaic was causing a disturbance by yelling and screaming at the nursing staff.[17] Zaic admits that she was trespassed from Mountain View.[18] After being removed, Zaic acknowledged that Mountain View told her that if she comes "back here, we're going to arrest you. We don't want you here."[19] LVMPD Police were called out on March 17th and informed Zaic that "if [Mountain View] want[s] you kicked out, you have to be kicked out. I'm not even allowed in

---

[11] Id. at 128:13-129:9.

[12] Id. at 130:11-25.

[13] Id. at 133:9-11.

[14] Id. at 139:1-5.

[15] Id. at 140:16-25.

[16] Id. at 148:3-9.

[17] Id. at 159:8-20.

[18] Id. at 63:1:6.

[19] Id. at 7-12.

this hospital unless they say I'm allowed here. He goes, and I'm the police."[20] The Officer told Zaic "if you come back here, we're going to arrest you."[21] After being trespassed, Zaic tried to get back into Mountain View sometime between March 17th and March 21st but the nurse would not let her in.[22]

### C. ON MARCH 21, 2008, ZAIC WAS TRESPASSING AT MOUNTAIN VIEW AND WAS REPORTED TO HAVE CAUSED A DISTURBANCE.

Despite being trespassed from Mountain View, Zaic unlawfully entered the hospital's premises on March 21, 2008.[23] At around 8:00 p.m., Zaic was sitting at the foot of her father's bed when Steve Zaic (her brother) and Steve's fiancé, co-defendant Danielle Pieper, walked into the hospital room.[24] Zaic knew that Steve and Pieper were engaged to be married and knew they were living together.[25] Zaic's father knew Pieper and had been out to dinner with her on numerous occasions prior to being hospitalized.[26] Despite these facts, Zaic immediately stood up from her chair and told Steve that the physician's orders stated, "No visitors other than his children are allowed in dad's room."[27]

After Steve and his fiancé stayed in Steve's father's room, Zaic told them to "[g]et the f**k out of here, you don't belong here."[28] At approximately 8:31 p.m., Mountain View Hospital contacted LVMPD to report a white female (Zaic) was on the property despite being

---

[20] Id. at 157:17-22.

[21] Id. at 158:22-24; Id. at 161:25-162:2 ("I was told—no. I was told, Don't come back; otherwise, I'm going to arrest you. No. He [the officer] said he has the original [trespass card].").

[22] Id. at 65:8-11.

[23] Id. at 66:18-20.

[24] **Exhibit C** at Answer to Interrogatory No. 4.

[25] **Exhibit D** at 69:17-24; Id. at 189:18-24.

[26] Id. at 69:23-70:14 and 71:15-16.

[27] **Exhibit C** at Answer to Interrogatory No. 4.

[28] **Exhibit D** at 72:4-6.

M&A:05166-451 1436795_1.DOC

previously trespassed and was being disruptive while visiting her father.[29]  After Zaic was notified that police were on their way, Zaic

> was crying, and [Zaic] told [the nurse], they're going to have me arrested because the security guard said if I come back here one more time, I'm going to be arrested. And the police said if I come here again, they're going to arrest me. On the 17th [of March] the police said, If you come here again, we're going to arrest you.[30]

Officer Frederick arrived at Mountain View hospital at approximately 8:36 p.m.[31]  Upon arrival, Officer Frederick went to the ICU room and told Zaic that Mountain View did not want her there.[32]  Officer Frederick continued by explaining that Zaic was not allowed on Mountain View property and that security had ordered her off.[33]  Zaic then walked outside Mountain View. From the time Officer Frederick arrived until they walked outside, Officer Frederick never touched Zaic.[34]

Officer Frederick and Officer Eagar began investigating the details of what occurred during the disturbance and asked Zaic to wait on a bench until they were done.[35]  Officers Frederick and Eagar learned from Pieper that after she was told to leave the room, Steve began telling Zaic to calm down.[36]  However, Zaic continued yelling "she needs to get the f**k out of the room. I only want family in here."[37]  Zaic then approached Pieper and stood about two feet from Pieper's face and said, "get the f**k out of the room, you don't belong here."[38]  As Zaic

---

[29] Incident Recall Report.

[30] **Exhibit D** at 79:6-16.

[31] **Exhibit A**.

[32] **Exhibit C** at Answer to Interrogatory No. 4.

[33] Id.

[34] **Exhibit D** at 86:22-25.

[35] Id. at 87:1-12.

[36] Voluntary statement of Danielle Pieper, attached to Answers to Requests to Admit, attached as **Exhibit E**.

[37] Id.

[38] Id.

continued to yell at Pieper, Zaic "pushes [Pieper] in the left shoulder and [Pieper] steps back" and as Pieper turns away she feels a blow to the right side of her neck.[39] LVMPD learned from Steve that Zaic had punched Pieper in the neck.[40] Steve's voluntary statement corroborated Pieper's statement.[41]

LVMPD spoke with Mountain View security and learned of Zaic's extensive problems over the past month.[42] Most important Mountain View security notified LVMPD that Zaic was unlawfully on the property because she was formally trespassed four days earlier.[43] Security also confirmed that, as reported in the 911 call, Zaic had been disruptive and combative while in Mountain View.[44] Based upon Steve, Pieper and Hospital security's statements, Zaic was arrested on a citizen's arrest for battery.

Officer Frederick informed Zaic that she was being placed under arrest and "handcuffed [Zaic's] hands behind [her] back and put [her] in the police car."[45] In her answers to interrogatories, Zaic only complains that the handcuffs were "uncomfortable."[46] At no time did Officer Frederick hit, punch, kick, slap, tase, or use any type of weapon on Zaic.[47] Also, Zaic never made any complaints that the handcuffs hurt her.[48] While on scene, Officer Eagar never talked to Zaic and never touched Zaic.[49]

---

[39] Id.

[40] **Exhibit B**.

[41] See **Exhibits B** at ¶ 9 and **Exhibit E**.

[42] **Exhibit A**.

[43] Id.

[44] Id.

[45] **Exhibit C** at Answer to Interrogatory No. 4 at 4:22-23.

[46] Id. at 4:27-28.

[47] **Exhibit D** at 89:6-25.

[48] Id. at 91:9-92:12.

[49] Id. at 87:19-21.

M&A:05166-451 1436795_1.DOC

III. **PROCEDURAL HISTORY**.

Zaic initially filed eight claims against LVMPD, Officer Eagar and Officer Frederick—one federal 1983 claim and seven state law claims. LVMPD moved for summary judgment on the state law claims for Zaic's failure to comply with NRS 41.036(2), which requires "[e]ach person who has a claim against any political subdivision of the State arising out of a tort must file the claim within 2 years after the time the cause of action accrues with the governing political body of that political subdivision." The Court granted LVMPD, Officer Eagar and Officer Frederick's motion for summary judgment and dismissed counts two through eight with prejudice.[50]

Now only Zaic's § 1983 claim is proceeding against LVMPD. Yet, even now, Zaic is in violation of this Court's order. On August 18, 2011, this Court granted Zaic's counsel's motion to withdraw and ordered that Zaic "shall have until 9/8/2011 within which to designate in writing new counsel of record or advise the Court of her intention to proceed as her own counsel." To date, Zaic has not complied with this order.

IV. **SUMMARY JUDGMENT STANDARD**.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[51] As to this rule, the Supreme Court has stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make his showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.[52]

The moving party must show the absence of a genuine issue of material fact.[53] An issue is only "genuine" if the evidence is such that a reasonable jury, applying the applicable quantum of

---

[50] Order granting LVMPD's Motion for Partial Summary Judgment, on file at Docket No. 27.

[51] Fed. R. Civ. P. 56(c)

[52] See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[53] See Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982).

8

M&A:05166-451 1436795_1.DOC

proof, could return a verdict for the non-moving party.[54] Whether a fact is "material depends on the substantive law and whether the fact affects the outcome of the lawsuit."[55]

Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial.[56] The Supreme Court in Anderson also held that if the evidence presented in the opposing affidavits is of insufficient caliber or quantity then no genuine issue of material fact is raised.[57] Further, if the factual context makes the respondent's claim implausible, then the party must come forward with more persuasive evidence then would otherwise be necessary to show there is a genuine issue for trial.[58] The parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient.[59]

Finally, the opposing party's burden is not excused by the fact that evidence to oppose the motion is in possession of the moving party as long as there has been a full opportunity to conduct discovery.[60] It is insufficient to meet the non-moving burden's party, where they have the burden to prove at trial, to show a mere metaphysical doubt as to the material facts.[61] There must be evidence on which the jury could reasonably find for the party opposing judgment.[62]

---

[54] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[55] Id.

[56] Id. at 250.

[57] Id. at 254.

[58] Celotex, 477 U.S. at 324.

[59] British Airways Bd. v. Boeing, Co., 585 F. 2d 946, 952 (9th Cir. 1978).

[60] Anderson, 477 U.S. at 249.

[61] Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

[62] Anderson, 477 U.S. at 247.

V.   **LEGAL ARGUMENT.**

Officer Frederick and Officer Eagar obtained probable cause to arrest Zaic for battery and trespassing after interviewing Mountain View security, an eyewitness and the alleged victim.[63] In effectuating the arrest, Zaic's excessive force claim fails because she acknowledged that her claim is based on the handcuffing being "uncomfortable." Thus, Zaic's unlawful seizure, excessive force and municipal liability claims, as outlined in her First Cause of Action, must be dismissed.

A.   **OFFICER FREDERICK AND OFFICER EAGAR HAD PROBABLE CAUSE TO ARREST ZAIC FOR BATTERY AND TRESPASSING.**

On March 21, 2008, LVMPD officers learned from eyewitnesses, Mountain View Security and the alleged victim that Zaic had committed two crimes: battery and trespassing. Although Zaic contends that the officers violated her Fourth Amendment rights by arresting her for battery without probable cause, Zaic's claim ignores Ninth Circuit law on what constitutes probable cause and never addresses the probable cause to arrest Zaic for trespass.

1.   **The Law and Probable Cause.**

The Fourth Amendment requires the existence of probable cause to justify an arrest.[64] In the context of a citizen's arrest (for which Zaic was arrested on the battery charge), "the federal Constitution requires officers to have independent probable cause (in addition to the arresting citizen's statement) when effectuating a citizen's arrest."[65] In other words, police officers are required to conduct additional investigation to establish probable cause prior to effectuating that

---

[63] Zaic alleges constitutional violations under the Fourth and Fourteenth Amendment. The United States Supreme Court has "always been reluctant to expand the concept of substantive due process." County of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S.Ct. 1708, 1714 (1998). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Id. (citations omitted). Hence, if a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.

[64] Washington v. State, 94 Nev. 181 (1978).

[65] Hopkins v. Bonvicino, 573 F.3d 752, 774 (9th Cir. 2009).

M&A:05166-451 1436795_1.DOC

arrest and cannot just rely on the arresting citizen's statement.[66] If probable cause existed, the officers will be protected.[67]

Probable cause exists for an arrest if, under the totality of the circumstances, a prudent person would have concluded that there was a "fair probability" that the arrestee committed a crime.[68] The test for probable cause is whether "facts and circumstances within the officer's knowledge…are sufficient to warrant a prudent person…to believe, in the circumstances shown, that the suspect has committed…an offense."[69] This test does not require absolute certainty that a crime has been committed, but "fair probability."[70]

"In making a decision to arrest someone …a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth."[71] "So long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the culprit under arrest…"[72] Additionally, law enforcement officers may draw upon their expertise and experience.[73] Even seemingly innocent conduct may provide the basis for probable cause when viewed in light of all the information known at the time of the seizure.[74] Prior arrests and convictions can help to establish probable cause, especially where the previous

---

[66] Id. at 775.

[67] See e.g. Turner v. County of Washoe, 759 F. Supp. 630 (D. Nev. 1991).

[68] United States v. Valencia-Amezcua, 278 F.3d 901, 906 (9th Cir. 2002).

[69] United States v. Greene, 783 F.2d 1364, 1367 (9th Cir. 1986) (quoting Michigan v. De Fillippo, 443 U.S. 31, 37 (1979)).

[70] United States v. Potter, 895 F.2d 1231, 1233-34 (9th Cir. 1990).

[71] Holmes v. Village of Hoffman Estates, 511 F.3d 673, 680 (7th Cir. 2007) (citations omitted).

[72] Id. (citations omitted).

[73] United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir. 1989).

[74] United States v. Rodriguez, 869 F.2d 479, 483 (9th Cir. 1989); see also United States v. Milner, 962 F.2d 908 (9th Cir. 1992) (the experience, special training, and expertise of the officers may be considered in determining the existence of probable cause).

M&A:05166-451 1436795_1.DOC

arrest or conviction involves a crime of the same general nature.[75] Here, Zaic's Fourth Amendment unlawful seizure claim fails because the Officer obtained probable cause that Zaic had committed two separate crimes: battery and trespass.

### 2. Statements From an Eyewitness and the Alleged Victim Provided Probable Cause To Arrest Zaic For Battery.

LVMPD arrested Zaic based on probable cause that she committed a battery—"'Battery' means any willful and unlawful use of force or violence upon the person of another."[76] LVMPD concluded that there was a fair probability that Zaic committed a battery based upon the following evidence: (1) the original call from Mountain View was to respond to a trespasser who was causing a disturbance;[77] (2) Pieper's voluntary statement and Declaration of Citizen's Arrest indicated that Zaic had repeatedly used profanity in Mountain View Hospital, Zaic became aggressive and was repeatedly yelling, Zaic pushed Pieper and as Pieper turned Zaic struck Pieper in the back of the neck;[78] (3) Steve's voluntary statement confirmed that Zaic was using profanity, yelling and struck Pieper;[79] (4) the Officers learned from Mountain View Security that Zaic formally trespassed four days earlier and throughout March 2008 Zaic had caused numerous incidents at the Hospital;[80] and (5) Officer Eagar observed a red mark on Pieper's body.[81]

Under the law, when Steve and Pieper both told LVMPD officers that Zaic had struck Pieper, Officers Frederick and Eagar had probable cause to believe Zaic had broken the law by

---

[75] United States v. Conley, 4 F.3d 1200, 1207 (3d Cir. 1993).

[76] NRS 200.481(a).

[77] **Exhibit A**.

[78] **Exhibit A** and **Exhibit E**.

[79] **Exhibit B**.

[80] **Exhibit A** and **Exhibit B**.

[81] **Exhibit B**.

M&A:05166-451 1436795_1.DOC

committing a battery.[82] Yet, the Officers went beyond just speaking to the eyewitness and alleged victim, the Officers spoke with security and learned that Zaic was formally trespassed four days earlier and was unlawfully on the property.[83] Over the course of the past month, Zaic had caused numerous disturbances at Mountain View.[84] This information supported the truthfulness of Steve and Pieper's voluntary statements. Based upon a totality of the circumstances, the evidence supported Pieper's Declaration of Citizen's Arrest and gave the officers independent probable cause that Zaic had battered Pieper. Thus, probable cause existed for the officers to arrest Zaic for battery.

### 3. Notification Of Zaic's Prior Trespass Warning and Zaic Being on The Property Provided Probable Cause to Arrest Zaic for Trespassing.

In addition to having probable cause to arrest for battery, the Officers also had probable cause to arrest Zaic for trespassing. To defeat Zaic's unlawful seizure claim, probable cause need only exist <u>as to any offense that could be charged</u> under the circumstances.[85] Because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect <u>for any criminal offense</u>, regardless of their stated reason for the arrest.[86] Probable cause, however, must still exist under some specific criminal statute.[87]

In addition to the probable cause that existed to arrest Zaic for battery, probable cause

---

[82] See Holmes, 511 F.3d at 680 ("In making a decision to arrest someone…a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth.").

[83] **Exhibit A**.

[84] Id.

[85] Devenpeck v. Alford, 125 S. Ct. 588, 593-94 (2004).

[86] Edgerly v. City and County of San Francisco, 599 F.3d 946, 954 (9th Cir. 2010) (citing Devenpeck v. Alford, 543 U.S. 146, 153-55, 125 S.Ct. 588, (2004)) ("Although the Officers lacked probable cause to arrest Edgerly for violating California Penal Code section 602(1)-now section 602(m)-the statute under which they cited him, we ultimately conclude that probable cause existed to arrest Edgerly under another trespass provision, California Penal Code section 602.8(a).").

[87] Id. (citing Davenpeck, at 155-56, 125 S.Ct. 588; see also Alford v. Haner, 446 F.3d 935, 937 (9th Cir.2006)).

M&A:05166-451 1436795_1.DOC

also existed to arrest Zaic for trespassing. In relevant part, trespassing occurs when an individual:

> (a) Goes upon the land or into any building of another with intent to vex or annoy the owner or occupant thereof, or to commit any unlawful act; or
>
> (b) Willfully goes or remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass.[88]

The LVMPD officers had probable cause to arrest Zaic for trespassing under both provisions of NRS 207.200.

The original 911 came to the officers as a female who had been previously trespassed and was being disruptive.[89] When the officers arrived, Officer Frederick learned from Mountain View security that Zaic had caused numerous problems at Mountain View and was trespassed on March 17, 2008—four days earlier.[90] Zaic knew she was trespassing because on March 21, 2008, when she was notified that police were called, Zaic

> was crying, and [Zaic] told [the nurse], they're going to have me arrested because the security guard said if I come back here one more time, I'm going to be arrested. And the police said if I come here again, they're going to arrest me. On the 17th [of March] the police said, If you come here again, we're going to arrest you.[91]

Zaic knew the consequences of being on the property. The 911 call and Mountain View security both informed Officer Frederick and Officer Eagar that Zaic was trespassing and subject to arrest because she had been warned only four days earlier.

Although Zaic was not formally arrested for trespassing, the fact that probable cause existed to arrest Zaic for trespassing makes the LVMPD Officer's seizure valid. Thus, because the LVMPD Officers had probable cause to seize Zaic for battery and trespassing, the LVMPD Officers respectfully requests Zaic's Fourth Amendment unlawful seizure claim be dismissed.

---

[88] NRS 207.200(a) & (b).

[89] Exhibit A.

[90] Id.

[91] **Exhibit D** at 79:6-16.

M&A:05166-451 1436795_1.DOC

B. **OFFICER FREDERICK AND OFFICER EAGAR ONLY USED REASONABLE FORCE IN HANDCUFFING ZAIC.**

Zaic's next allegation is that the officer's use of force during the handcuffing was "uncomfortable."[92] In her complaint, Zaic alleges that Officer Frederick and Eagar used excessive, unreasonable and unjustified force in effectuating the arrest at Mountain View Hospital—a violation of Plaintiff's Fourth Amendment Rights. The use of excessive force in effecting a seizure violates the Fourth Amendment.[93] Claims of excessive force "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."[94]

1. **The Law and Excessive Force.**

The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to affect it."[95] Determining the "reasonableness" of the force used to affect an arrest or seizure "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[96] Factors to consider include "officer's safety, the motivation for the arrest, and the extent of the injury inflicted."[97] While the severity of the injury is not dispositive on the issue of excessive force, minimal force that causes only minor injury is not of a constitutional magnitude.[98]

As a general rule, handcuffing, without more, does not constitute excessive force.[99] The

---

[92] **Exhibit C** at Answer to Interrogatory No. 4.

[93] Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694 (1985).

[94] Graham v. Conner, 490 U.S. 386, 388 (1989).

[95] Id. at 1872.

[96] Id. (quotations omitted).

[97] McKenzie v. Lamb, 738 F.2d 1005, 1011 (9th Cir. 1984).

[98] See Gold v. City of Miami, 121 F.3d 1443, 1446 (11th Cir. 1997).

[99] Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir.2002); Gold v. City of Miami, 121 F.3d 1442, 1446–47 (11th Cir.1997) (holding that use of handcuffs that resulted in minor skin abrasions reflected the use of only minimal force and the officer was entitled to qualified immunity on excessive force claim); Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir.2001) (handcuffing too tightly, without more, does not amount to excessive force); Stainback v. Dixon, 569 F.3d 767, 773 (7th Cir.2009) (generalized

M&A:05166-451 1436795_1.DOC

1  Fourth, Fifth, Seventh and Eleventh Circuits stated that a standard procedure such as handcuffing
2  would rarely constitute excessive force where the officers were justified, as here, in effecting the
3  underlying arrest.[100]  Handcuffs that are too tight or painful will not support an excessive force
4  claim without more.[101]

### 2. No Excessive For was used.

6  Here, Zaic only alleges that the handcuffs were "uncomfortable." [102]  Simply, Officer
7  Frederick applied reasonable restraint in accord with LVMPD procedures for effecting Zaic's
8  arrest. Officer Frederick informed Zaic that she was being placed under arrest and "handcuffed
9  [Zaic's] hands behind [her] back and put [her] in the police car."[103]  In her answers to
10 interrogatories, Zaic claims that the handcuffs were "uncomfortable."[104]  Zaic makes no other
11 excessive force claims.  Also, at no time did Officer Frederick hit, punch, kick, slap, tase, or use
12 any type of weapon on Zaic.[105]  Zaic made no other complaints regarding the handcuffing.[106]
13 Regarding Zaic's excessive force claim against Officer Eagar, Officer Eagar never talked to Zaic
14 and never touched Zaic.[107]  Thus, Zaic's generalized complaints that the handcuffs were
15 "uncomfortable" will not support an excessive force claim.  Officer Eagar and Officer Frederick
16 respectfully request Zaic's excessive force claim be dismissed.

---

complaints, without more, insufficient to maintain excessive force claim based on overly tight handcuffs); Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir.2002) (painful handcuffing, without more, does not constitute excessive force).

[100] Brown, 278 F.3d at 369.

[101] Id. (painful handcuffing, without more, is insufficient to constitute excessive force); Stainback, 569 F.3d at 773 (generalized complaints of handcuffs being too tight is insufficient).

[102] Id. at 4:27-28.

[103] **Exhibit C** at Answer to Interrogatory No. 4 at 4:22-23.

[104] Id. at 4:27-28.

[105] Id. at 89:6-25.

[106] See **Exhibit D** at 91:9-92:12.

[107] Id. at 87:19-21.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

C.  **ZAIC FAILED TO ESTABLISH A <u>MONELL</u> CLAIM AGAINST LVMPD.**

The last portion of Zaic's first cause of action is a <u>Monell</u> claim against LVMPD. Zaic's <u>Monell</u> claim fails against LVMPD because there was no constitutional violation (as outlined above) and Zaic cannot identify a policy that was the moving force behind the alleged constitutional violations. Zaic alleged that:

> [t]he actions of defendant officers B. EAGAR, P#6189, T. FREDERICK, P#9793 where [sic] taken pursuant to a de facto policy of defendant LVMPD which is implemented by police officer of the said Department to summarily punish persons in an unlawful manner without corroborating information and without rightful authority of law and by the use of excessive force.[108]

Zaic concluded that "despite their knowledge of illegal policies and practices, LVMPD's supervisory officers and policy making officers, as a matter of policy, have not taken steps to determine the said practices" and have not disciplined or supervised its officers.[109]

1.  **The Law and Monell Claims.**

Section 1983 is not itself a source of substantive rights, but merely a procedural vehicle to vindicate federal rights elsewhere conferred.[110] It was not until the landmark case of <u>Monell v. Dep't. of Social Services</u>,[111] that the Supreme Court authorized suits against municipalities in limited circumstances. Municipal liability only exists where the municipality "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is committed pursuant to governmental "custom" even though such "custom" has not received formal approval.[112] A "custom" is "persistent and widespread discriminatory practices by state officials."[113]

---

[108] Docket No. 31 at ¶ 37.

[109] <u>Id.</u> at ¶ 39.

[110] <u>See</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994).

[111] 436 U.S. 658 (1978)

[112] <u>Monell</u>, 436 U.S. at 690-91.

[113] <u>Id.</u> at 691 (citing <u>Adickes v. S.H. Dress & Co.</u>, 398 U.S. 144, 167-68 (1970)).

M&A:05166-451 1436795_1.DOC

The Court held in Monell that there is no *respondeat superior* liability against municipalities under § 1983. Thus, to impose liability against a municipality, the plaintiff must prove the existence of a "policy" or "custom" of the municipality which caused the constitutional violation at issue. In City of Oklahoma City v. Tuttle,[114] the Court held that a single incident was not sufficient to establish liability against a municipal defendant. Furthermore, in addition to proof of a policy or custom, the courts require proof of both causation and culpability to establish municipal liability.

Therefore, to establish municipal liability under § 1983 against LVMPD (or officers in their official capacities), Zaic must show: (1) a violation of the Plaintiff's constitutional rights occurred; (2) the action of the Defendants was under color of law; (3) the action was taken pursuant to a plan, policy or custom of the entity; and (4) the policy or custom was the actual cause or moving force behind the alleged deprivation.[115]

### 2. Zaic Has No Evidence Supporting a Monell Claim.

Zaic's Monell claim fails because there was no constitutional violation—as outlined above.[116] Moreover, throughout discovery Zaic failed to identify an LVMPD plan, policy or custom that was the actual cause or moving force behind her alleged deprivations. In addition, Zaic has not identified other instances of excessive for. Her Monell claim is based exclusively upon her personal encounter with LVMPD. Under Federal law this is insufficient to establish a Monell claim.[117] Thus, LVMPD respectfully requests the Court dismiss Zaic's Monell claim against LVMPD.

---

[114] 471 U.S. 808 (1985).

[115] See Kentucky v. Graham, 473 U.S. 159, 165 (1985); West v. Atkins, 487 U.S. 42 (1988); City of Canton v. Harris, 489 U.S. 378 (1989); Davis v. City of Ellenberg, 869 F.2d 1230 (9th Cir. 1989).

[116] See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

[117] City of Oklahoma v. Tuttle, 471 U.S. 808 (1985) (the Court held that a single incident was not sufficient to establish liability against a municipal defendant).

## VI. CONCLUSION.

The LVMPD Defendants respectfully request they be dismissed from this case. Previously, this Court dismissed all state law claims brought against the LVMPD defendants. Now, LVMPD requests Zaic's first cause of action—violation of civil rights—be dismissed.

DATED this 22nd day of September, 2011.

MARQUIS AURBACH COFFING

By _____
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Joshua L. Benson, Esq.
Nevada Bar No. 10514
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Defendants

M&A:05166-451 1436795_1.DOC